570 S.E.2d 571

Matthew Aaron KERNER, Plaintiff Below, Appellee,

v.

AFFORDABLE LIVING, INC., Formerly Known as Buckhannon Home Show, Inc., Now Known as the Home Show–Buckhannon, Inc., Defendant Below, Appellant.

No. 30358.

Supreme Court of Appeals of West Virginia.

Submitted June 5, 2002.

Decided June 19, 2002.

Dissenting Opinion of Justice Albright July 2, 2002.

Orton A. Jones, Esq., Hedges, Jones, Whittier & Hedges, Spencer, for The Home Show–Buckhannon, Inc.

James M. Pool, Esq., The Law Offices of James M. Pool, Clarksburg, for Matthew Aaron Kerner.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Upshur County entered on June 4, 2001. In that order, the circuit court denied a motion for relief from judgment filed pursuant to Rule 60(b) of the West Virginia Rules of Procedure by the appellant and defendant below, The Home Show–Buckhannon, Inc., in this wage collection action instituted by the appellee and plaintiff below, Matthew Aaron Kerner. In this appeal, The Home Show–Buckhannon contends that the judgment against it is void, and therefore, the circuit court erred by not granting its Rule 60(b) motion.

This Court has before it, the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed.

## I. FACTS

Matthew Aaron Kerner began working for the Buckhannon Home Show, Inc., on February 7, 1993. His employment was terminated for unsatisfactory work on March 30, 1994. On February 16, 1995, Kerner filed a wage claim against the Buckhannon Home Show seeking various commissions he had allegedly earned as a sales representative.

After Kerner instituted this civil action, the Buckhannon Home Show sold all of its assets at its Buckhannon, West Virginia location to a newly formed corporation known as The Home Show–Buckhannon, Inc. The majority stockholder of both corporations was Charles Crihfield.[1] An asset purchase agreement was executed by the two corporations on January 2, 1996. Pursuant to that agreement, The Home Show–Buckhannon paid the Buckhannon Home Show $184,559.00 in cash for its assets at the Buckhannon location and assumed its mobile home floor plan financing indebtedness to Bank One in Buckhannon. Thereafter, The Home Show–Buckhannon employed a new manager, reopened the Buckhannon sales lot, and proceeded to do business with the assets it purchased.

The Buckhannon Home Show remained in business at its other location in Clarksburg, West Virginia. In May 1996, Crihfield, and the co-owner of the business, James Smith, sold their stock in the Buckhannon Home Show to Jay Murphy for $10,000. Subsequently, Murphy changed the name of the Buckhannon Home Show to Affordable Living, Inc. An appropriate notice of change of name was filed in the instant civil action, and the named defendant was reformed to "Affordable Living, Inc., formerly known as the Buckhannon Home Show, Inc."

On January 13, 1997, Affordable Living entered into a stipulation for entry of judgment with Kerner. Pursuant to that stipulation, Kerner was granted a judgment against "Affordable Living, Inc., formerly known as the Buckhannon Home Show, Inc.," in the amount of $17,500.00. Despite several attempts to collect this judgment, Kerner was unable to do so.[2] Thus, in August 2000, Kerner filed a motion in the circuit court requesting that the name of the defendant in the case be reformed to "Affordable Living, Inc., formerly known as the Buckhannon Home Show, Inc., now known as The Home Show–Buckhannon, Inc."

---

1. Charles Crihfield owned 51% of the Buckhannon Home Show and 26% of The Home Show–Buckhannon.

2. Apparently, Affordable Living's business license was revoked in May 1998.

On September 5, 2000, the circuit court held a hearing on Kerner's motion. Following that hearing, the circuit court granted the motion in an order dated September 19, 2000, which stated, in pertinent part:

[T]he Judgement previously entered by the Court on January 13, 1997 against Affordable Living, Inc, formerly known as the Buckhannon Home Show, Inc., in the amount of Seventeen Thousand Five Hundred Dollars ($17,500.00) plus interest at the legal rate until satisfied is hereby reformed and said Judgement is now to run from the date of its original entry against each of the following entities: Buckhannon Home Show, Inc.; Affordable Living, Inc. and The Home Show–Buckhannon, Inc.

Subsequently, The Home Show–Buckhannon filed an appeal with this Court. The petition for appeal was denied on April 5, 2001. On May 10, 2001, The Home Show–Buckhannon filed a Rule 60(b) motion for relief from judgment with the circuit court. The motion was denied and another appeal was filed with this Court. In September 2001, this Court again denied the appeal. Thereafter, The Home Show–Buckhannon filed an amended petition renewing its petition for appeal. Following an oral presentation of the amended petition for appeal to this Court on February 5, 2002, the appeal was granted.

## II. STANDARD OF REVIEW

■ As discussed above, The Home Show–Buckhannon appeals an order denying its motion for reconsideration filed pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure.[3] In Syllabus Point 5 of *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974), this Court held that "[a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." With this standard in mind, we now address the issue in this case.

## III. DISCUSSION

■ In Syllabus Point 3 of *Toler, supra*, this Court held that "[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Thus, the sole issue before this Court is whether the circuit court abused its discretion by denying the Rule 60(b) motion filed by The Home Show–Buckhannon.

■ In *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 705, 474 S.E.2d 872, 885 (1996), this Court observed that "the weight of authority supports the view that Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit." In other words, " '[w]here the motion is nothing more that a request that the ...

---

**3.** Rule 60(b) of the West Virginia Rules of Civil Procedure states:

*Mistakes; Inadvertence; Excusable Neglect; Unavoidable Cause; Newly Discovered Evidence; Fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

court change its mind ... it is not authorized by Rule 60(b).'" *Id., quoting United States v. Williams,* 674 F.2d 310, 312 (4th Cir.1982). This Court concluded in *Powderidge* that "[a] circuit court is not required to grant a Rule 60(b) motion unless a moving party can satisfy one of the criteria enumerated under it ... a Rule 60(b) motion to reconsider is simply not an opportunity to reargue facts and theories upon which a court has already ruled." 196 W.Va. at 706, 474 S.E.2d at 886. More recently, we stated that "[i]n the absence of appropriate presentation of additional issues for consideration, the lower court's denial of Rule 60(b) relief is not error." *Rose v. Thomas Memorial Hosp. Foundation, Inc.,* 208 W.Va. 406, 414, 541 S.E.2d 1, 9 (2000).

■ Our review of the record in this case revealed that The Home Show–Buckhannon failed to present any additional issues for consideration in its Rule 60(b) motion. The basis of The Home Show–Buckhannon's Rule 60(b) motion was that it was not a proper party in the case because it had never been served with process and that it was not a continuation of either the Buckhannon Home Show or Affordable Living, and therefore, the judgment granted to Kerner could not be enforced against it. These precise issues were considered by the circuit court at the September 5, 2000 hearing.

The record shows that The Home Show–Buckhannon appeared at the September 5, 2000 hearing pursuant to a notice served on it by Kerner. The Home Show–Buckhannon fully participated in the hearing and when asked by the Court if it objected to the notice, The Home Show–Buckhannon replied that it did not. The record also shows that the focus of the September 5, 2000 hearing was whether The Home Show–Buckhannon was a continuation of the Buckhannon Home Show. During the hearing, The Home Show–Buckhannon acknowledged that it had continued to do business on the same property previously owned by the Buckhannon Home Show and had in fact assumed that corporation's active business after the asset purchase agreement was executed. Essentially, the

Buckhannon Home Show ceased to exist at its Buckhannon location in name only. The business continued immediately under the name of The Home Show–Buckhannon much as it had before the asset purchase agreement was executed. Charles Crihfield, who was the majority stockholder of the Buckhannon Home Show, is also the majority stockholder of The Home Show–Buckhannon.[4] Based upon these facts, the circuit court determined that The Home Show–Buckhannon was a continuation of the Buckhannon Home Show, and therefore, Kerner was entitled to collect his judgment from The Home Show–Buckhannon.

It is evident that the issues raised by The Home Show–Buckhannon in its Rule 60(b) motion were thoroughly considered by the circuit court at the September 5, 2000 hearing. Moreover, the same issues were raised by The Home Show–Buckhannon when it initially appealed the circuit court's ruling. Upon this Court's refusal to grant that appeal, The Home Show–Buckhannon sought another round of judicial proceedings by filing its Rule 60(b) motion. As set forth above, Rule 60(b) simply does not authorize a motion for reconsideration of a legal issue heard at the underlying proceeding. Therefore, we are unable to find that the circuit court abused its discretion in denying the Rule 60(b) motion.

We note that this case has been in litigation for seven years and that for more than five of those years, Kerner has simply been trying to collect the judgment to which he is legally entitled. However, Kerner has been constantly frustrated in those attempts by the defendants. While we cannot say that the defendants formed their new corporations solely in an effort to avoid satisfying the judgment awarded to Kerner, the defendants have attempted to use those corporations for that exact purpose. Were this Court to allow a corporation to avoid paying a judgment against it by selling its assets to a new corporation and essentially only changing its name, then no judgment rendered against a corporation would ever be paid. Instead, "new corporations" would constantly

---

4. Crihfield is the majority stockholder of The Home Show–Buckhannon with 26% of the stock because the remaining 74% is divided among seven other people.

be formed. Such conduct cannot be permitted.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Upshur County entered on June 4, 2001, is affirmed.

Affirmed.

Chief Justice DAVIS concurs.

ALBRIGHT, Justice, dissenting.

(Filed July 2, 2002)

I have no choice but to dissent from a majority opinion which allows the constitutionally protected right to due process to be flagrantly disregarded.

In reliance on our previous decisions regarding review of lower court rulings on Rule 60(b) motions, the majority concluded that the lower court in the present case did not abuse its discretion because the issues raised by the appellant, The Home Show–Buckhannon, Inc. (hereinafter "HS–B"), had been "thoroughly considered" by the court below and HS–B's appeal was merely an attempt to relitigate the legal issues heard at the underlying proceeding. However, HS–B was not requesting that any issue be litigated *again*. Rather, HS–B was asking to have its concerns heard meaningfully for the first time by the lower court, which a careful and objective examination of the record reveals did not occur in this case.

In its Rule 60(b) motion, HS–B claimed that it is and has been a different and separate legal entity from the judgment debtors and defendants in the underlying case, Buckhannon Home Show, Inc. (hereinafter "BHS") and Affordable Living, Inc. As such, HS–B argues that it could not be named as a judgment debtor in the Kerner wage claim suit because HS–B was not named as a party, was not served with a summons and complaint, did not have the opportunity to defend and offer evidence, did not participate

in the stipulation of Affordable Living—in sum, it was not given the opportunity to be fairly heard as to the merits of its arguments *before* judgment was entered in the case. The majority's finding that the record showed that HS–B fully participated in the September 5, 2000, hearing and did not object when asked by the court if it had a problem with the notice of the September 5 hearing completely misses HS–B's due process argument. It is not the notice of or participation in the post judgment hearing that is at issue.

HS–B argues further that even if it had been named a party to the Kerner suit, HS–B could prove that it was not a successor corporation to BHS and had no liability for the debts of BHS when HS–B purchased the assets from and assumed the floor plan financing for BHS (subsequently renamed Affordable Living, Inc.). The record shows that this issue was not addressed at the September 5, 2000, hearing, nor could it have been addressed at that time because the issue was not even brought before the lower court until HS–B filed its Rule 60(b) motion on May 10, 2001.[1]

HS–B's Rule 60(b) motion which is the basis for this appeal was first considered by the court below on May 11, 2001, during a hearing which had been called, according to the transcript and the subsequent order entered, for the particular purpose of determining whether execution should issue on the surety bond posted by HS–B when it appealed the September 19, 2000, amended judgment order. The transcript of the May 11 hearing further shows that despite HS–B's attempts to have the court below consider the substance of its Rule 60(b) motion and set a hearing to take evidence on the issues raised therein, the lower court refused to do so, and stated instead that:

> [T]his case has been litigated enough, and it's finalized, as far as I'm concerned. The Supreme Court denied the appeal.... [t]here's no sense setting a date to hear

---

1. The record contains a "Motion to Reconsider" raising similar issues filed on December 15, 2000, by HS–B; however, the record does not show that this motion was taken up at any hearing nor does the record indicate that the court otherwise considered or ruled on the motion. Nevertheless, evidence was not taken by the lower court on either motion to reform the judgment.

your motion, [be]cause I'm going to deny it, and I'm going to deny it at this time, your 60B motion. We've been through this on several occasions. We've litigated it, we've had hearings, we've done everything, and it seems like every time we move, there's some kind of a jump around among these corporations to show that something else belongs here and something else belongs there, it's done. The execution is issued.

This statement demonstrates that the lower court questioned the legitimacy of HS–B's assertion that it was not liable as a successor corporation for the debts of BHS. Faced with such a situation, the lower court should have followed the direction provided in the syllabus of *Meadows v. Daniels,* 169 W.Va. 237, 286 S.E.2d 423 (1982):

> Where a Rule 60(b) motion is made to set aside a judgment and there is a conflict as to the facts on whether there is a ground to set aside the judgment, the trial court should hold a hearing to resolve the disputed facts and make some findings relative thereto.

*Id.* HS–B's Rule 60(b) motion was based on the assertion that it being named a judgment debtor was due to a mistake and/or misrepresentation regarding the circumstances by which it became a successor corporation. HS–B offered to present evidence in support of the assertion. Since factual issues were in dispute regarding the liability of HS–B and no documentary or testimonial evidence had been taken on this issue by the lower court, a hearing concerning the relevant factors which would prove or disprove HS–B's liability[2] certainly was warranted.

Consequently, HS–B was forced to assume liability for satisfaction of a judgment entered in a case to which it was never made a party. In other words, HS–B was "deprived of... property [ ] without due process of law ...." W.Va. Const. art. III, § 10. Sadly, appeal to this Court of the denial of the 60(b) motion did not correct the injustice but instead contributed to it.

This Court was not being asked in this appeal, as the majority appears to believe, to set aside or ignore our holding in *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974) and to examine substantive issues related to the underlying judgment. HS–B was simply asking to be given its day in court for a full and fair hearing on the issue of whether it could be held liable as a successor corporation for the judgment in the Kerner case. More instructive to this appeal is the premise set forth in syllabus point six of *Toler,* which states that

> [a] court, in the exercise of discretion given it by the remedial provisions of Rule 60(b), W.Va.R.C.P., should recognize that the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits.

*Id.* at 778, 204 S.E.2d at 86.

I do not condone the forming of new corporations for the sole purpose of avoiding payment of debts; however, justice can not be accomplished when bald assertions rather than credible evidence form the basis for determining liability for debts. In the case before us, it appears likely that the "new" corporation paid the "old" corporation substantial consideration for its assets, including substantial cash and the assumption of obligations for payment of a portion of the stock-in-trade of the "old" corporation, that is to say, the assumption of obligations for "floorplan" inventory. If this be shown in fact, I do not believe there would be any grounds to saddle the "new" corporation with other debts of the "old" corporation. Fair is fair to all; appellants have *not* been fairly heard, I believe.

I am authorized to state that Justice STARCHER joins in this dissent.

---

**2.** *See* Syl. Pt. 3, *Davis v. Celotex Corp.,* 187 W.Va. 566, 420 S.E.2d 557 (1992) (delineation of instances when a successor corporation is liable for the debts and obligations of a predecessor corporation); *Jordan v. Ravenswood Aluminum Corp.,* 193 W.Va. 192, 455 S.E.2d 561 (1995) (examination of whether successor corporation simply a reincarnation of its predecessor).