**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

**FILED**

**April 22, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CHRISTOPHER I.,**
**Respondent Below, Petitioner**

**v.) No. 23-ICA-460**     (Fam Ct. Randolph Cnty. No. FC-42-2020-D-99)

**VERONICA I.,**
**Petitioner Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Christopher I.[1] ("Husband") appeals the Family Court of Randolph County's September 20, 2023, Order of Reconsideration, which denied his motion for reconsideration of the final divorce decree regarding the separate valuation of timber on real property and modified the final divorce decree by denying him *Conrad*[2] credits for mortgage payments he made on the marital home. Respondent Veronica I. ("Wife") filed a response in support of the family court's order.[3] Christopher I. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in October 2006 and had two children during the marriage. In September 2020, the parties separated, and Wife filed a petition for divorce in the Family Court of Randolph County. Wife sought, among other things, temporary and permanent spousal support.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990).

[2] *Conrad v. Conrad*, 216 W.Va. 696, 612 S.E.2d 772 (2005) (discussing a potential credit to a party in divorce proceedings where that party has made payments of marital debt or maintenance on the marital home between the time of separation and the divorce).

[3] Christopher I. is represented by Erika Klie Kolenich, Esq. Veronica I. is represented by Jaymie Godwin Wilfong, Esq.

1

At the onset of litigation, Wife remained in the marital home with the parties' minor children and Husband resided at the parties' property in Barbour County, West Virginia ("Barbour County Property"). The Barbour County Property was a separate piece of real estate purchased by the parties in August 2020 for $260,000.00.

On November 2, 2020, the family court held an initial hearing and on December 29, 2020, the court entered an order awarding Wife temporary spousal support in the amount of $600.00 per month, to be paid by Husband in the form of mortgage payments on the marital home due to Wife's possession of said home. This order of spousal support remained in effect throughout the entirety of the proceedings.

On July 19, 2021, Wife filed a motion to continue litigation, asserting that the Barbour County Property contained valuable timber that needed valuation to properly determine equitable distribution.[4] Specifically, Wife asserted that she was having a difficult time locating a professional to appraise the timber rights associated with the property. The family court granted Wife's motion to continue.

On September 16, 2021, a consulting forester appraised the 110 acres of timber on the Barbour County Property. His report determined that the quality of the timber was good to very good and valued the timber on the property for $298,864.38. Additionally, a real estate appraiser valued the real property, which did not include the timber value, for $295,000.00. Thus, the value of the timber was higher than the value of the property itself.

On June 29, 2022, July 21, 2022, and September 14, 2022, the family court held a final hearing on the divorce petition. Regarding the Barbour County Property, Husband testified that it was never the parties' intent to timber the property; thus, the value of the timber should not be considered for purposes of equitable distribution. However, Wife and two other witnesses testified that timbering the property was the reason for the parties' purchase of the property. The family court found that Husband's testimony was not credible regarding the parties' intent to not timber the property.

During the final divorce hearing, the real estate appraiser and the consulting forester testified regarding the Barbour County Property. The forester testified that the total value of the timber on the land, less his ten percent commission fee to timber to the property, resulted in a total value of $268,977.94. He further testified that as consulting forester, it would be his responsibility to ensure that no damage was caused to the land and that proper clean-up was performed once the timber was cut and removed; the property would be returned to its original state, or better. The real estate appraiser testified that his value of

---

[4] The Barbour County Property consists of four tracts of land totaling approximately 120.9 acres, but approximately 11 of those acres open land. The property also contains a dwelling, a detached garage, and a shed.

the property did not include the value of the timber because he has no experience in valuing timber. He stated that he makes a referral to a forester to appraise the actual value of the timber if needed. He also testified that he does not add the timber's value to the market value of the property because that would be considered "double-dipping." Importantly, the real estate appraiser testified that the removal or presence of timber on real property does not affect the marketability of property as long as the property is properly cleaned after any timber removal and there are no negative effects on the property such as "eye sores." His testimony further revealed that bare pastureland, clear cutting of timber, or selective cutting of timber would have little effect, if any, on the property's value as long as the property was properly managed and maintained.

On April 25, 2023, the family court entered a final divorce decree. The court found that the parties purchased the Barbour County Property with the intent to timber the land and, as such, valued the property at $295,000.00 and separately valued the timber on the property at $268,977.94.[5] The family court awarded exclusive possession, ownership, and debt of the Barbour County Property to Husband, and also awarded him exclusive possession and ownership of the property's timber, and rights to choose whether to timber the property. Wife was awarded the marital home, valued at $120,000.00, and its debt. Additionally, the family court ordered Husband to pay an equalizing payment to Wife in the amount of $125,888.97 less *Conrad* credits for the $600.00 monthly payments he made on the marital home during the parties' separation up until the divorce. The family court also ordered Husband to continue paying $600.00 per month in rehabilitative spousal support until September 2024.

On May 18, 2023, Wife filed a motion for the family court to reconsider its final divorce decree. Wife requested the family court to reconsider its *Conrad* credit ruling because the $600.00 monthly payments had been designated as temporary spousal support since the beginning of the litigation.

On May 31, 2023, Husband filed a response to Wife's motion for reconsideration and a motion for the family court to reconsider its final divorce decree. Husband requested that the family court deny Wife's reconsideration of *Conrad* credits and moved the family court to clarify and reconsider its separate valuation of the Barbour County Property's market value and timber value because timbering would deplete the property's market value.

On September 20, 2023, the family court entered its order on the parties' motions. Regarding *Conrad* credits, the court found that although neither party requested *Conrad* credits during the litigation, the court "mistakenly thought this was an oversight by the

---

[5] The family court's total timber value was calculated by reducing the forester's total appraisal amount by his stated 10% commission fee.

3

[p]arties" and "[the court] forgot it had already deemed these monthly, $600.00 payments as spousal support earlier in the litigation." Because the family court recognized its own error, it modified the final divorce decree by ordering Husband not to receive *Conrad* credits and adjusted the equitable distribution calculation accordingly. The family court denied Husband's motion to reconsider the separate valuation of the timber on the Barbour County Property by finding that his argument had "already been argued in court, ad nauseum" and had already been considered during the final divorce hearing. It is from the family court's September 20, 2023, Order of Reconsideration that Husband now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of a family court order).

Motions for reconsideration are governed by West Virginia Code § 51-2A-10 (2001) which states that:

(a) Any party may file a motion for reconsideration of a . . . final order of the family court for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been available at the time the matter was submitted to the court for decision; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) clerical or other technical deficiencies contained in the order; or (5) any other reason justifying relief from the operation of the order.

(b) A motion for reconsideration must be filed with the clerk of the circuit court within a reasonable time and for reasons set forth in subdivision (1), (2) or (3), subsection (a) of this section, not more than one year after the order was entered and served on the other party in accordance with rule 5 of the rules of civil procedure. The family court must enter an order ruling on the motion within thirty days of the date of the filing of the motion.

4

Pursuant to Rule 13 of the West Virginia Rules of Appellate Procedure, an appeal to this Court from a family court's final order must be filed within thirty days of the final order's entry. However, Rule 28 of the Rules of Practice and Procedure for Family Court provides that "[i]f a motion for reconsideration has been properly filed within the time period to file an appeal, the time for filing an appeal is extended until thirty days after entry of the final order on the motion for reconsideration by the family court." Here, Husband filed his motion for reconsideration of the final divorce decree on May 31, 2023, approximately thirty-six days after the entry of the final divorce decree. Thus, only the family court's Order of Reconsideration is ripe for appellate consideration by this Court.

Husband asserts two assignments of error. First, he asserts that the family court erred when it separately valued the timber from the market value on the Barbour County Property. In support of his argument, Husband asserts that the family court disregarded testimony from the expert real estate appraiser who testified that the real estate value would change if the property was timbered. We disagree.

In *William J. v. Marilyn J.*, No. 17-1013, 2018 WL 6015837, at *4 (W. Va. Nov. 16, 2018) (memorandum decision), the Supreme Court of Appeals of West Virginia held that a family court did not abuse its discretion when it separately valued timber on real property for the purposes of equitable distribution. In *William J.*, the parties had a stipulated value of $205,000.00 for real property that a husband was awarded in a divorce, but the family court separately valued the property's timber. On appeal, the husband argued that the real estate appraiser had already considered the value of the timber in the appraisal so the timber's value should not be considered separately for the purposes of equitable distribution; thus, the timber value should be deducted from the property's overall value that was awarded to him. The *William J.* Court disagreed. The Court noted that the real estate appraiser specifically testified that he did not value the timber on the property because timber values were out of the realm of a real estate appraiser's expertise and that timber values must be assessed by qualified professionals. Moreover, the husband did not cross-examine the real estate appraiser or offer any rebuttal evidence. The certified timber appraiser valued the timber at $40,000.00. Based on the appraisers' testimonies, the family court assigned a separate value for the timber in the equitable distribution award. Ultimately, the *William J.* Court concluded that there was no abuse of discretion and upheld the family court's ruling.

Similarly, in the instant case, the real estate appraiser testified that he had no experience valuing timber and although trees were considered in his appraisal of the Barbour County Property, he testified that "a tree is a tree." He also testified that as long as the trees were timbered responsibly, the land left in good condition, and all proper protocols followed, timbering the property should not cause a negative effect on the market value of the property. The consulting forester testified that it was his responsibility to ensure that no damage was caused to the land and that proper clean-up was performed once

5

the timber was cut and removed and that the real property would be returned to its original state, or better.

Here, Husband's motion for reconsideration simply asked the family court to clarify and reconsider its separate valuation of the timber because he could not "sell the property after it had been timbered and receive the value assigned by the [c]ourt because the timbering would significantly deplete the property value below what the [c]ourt has attributed to it." The family court, in denying Husband's motion for reconsideration, found that during the final hearing on the divorce petition, evidence was thoroughly considered regarding the separate values of the Barbour County Property and the property's timber through the parties' testimony, expert testimony, witness testimony, and documentation. The court further found that the parties fully argued their positions and after careful consideration, the court found that the parties purchased the Barbour County Property with the intent to sell the timber. The court concluded that there was significant evidence that the parties knew they were buying the property for a deal given the considerable amount of timber on the property, and that all the issues raised in Husband's motion for reconsideration had already been argued before the family court.

As we have previously held, "[a] motion for reconsideration is simply not an opportunity to re-argue facts upon which a court has already ruled." *Heidi Y. v. Jordan C.*, No. 23-ICA-62, 2023 WL 5695376, at *3 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision). In *Ray v. Ray*, 216 W. Va. 11, 14 n.13, 602 S.E.2d 454, 457 n.13 (2004), *overruled on other grounds Allen v. Allen*, 226 W. Va. 384, 701 S.E.2d 106 (2009), the Supreme Court of Appeals found that motions pursuant to West Virginia Code § 51-2A-10 have replaced motions for relief from judgment under Rule 60(b) of the West Virginia Rules of Civil Procedure in family court. Where the motion is nothing more than a request that the court change its mind, it is not authorized by Rule 60(b). *See Kerner v. Affordable Living, Inc.*, 212 W. Va. 312, 315, 570 S.E.2d 571, 574 (2002).

After a thorough review of the record below, it is apparent that Husband's arguments regarding his first assignment of error have either already been argued or could have been argued before the family court. Therefore, we find no error in the family court's denial of Husband's motion for reconsideration regarding the separate timber valuation.

In his second assignment of error, Husband asserts that the family court erred by failing to award him *Conrad* credits for making mortgage payments on the marital home during the parties' separation. In support of his argument, Husband contends that the family court erroneously justified its determination only because the term "spousal support" was used in lieu of identifying the payments for what they actually were – payments of marital debt.

The record indicates that Husband was ordered to pay temporary spousal support in the amount of $600.00 per month by order entered on December 29, 2020. The family court

6

directed these payments be made towards the mortgage on the marital home since Wife remained there with the parties' children at the commencement of these proceedings. Husband argues that because the monthly payments were given to a third-party bank to pay the marital debt, instead of directly to Wife, it is irrelevant that the family court defined the payments as spousal support, and he should nonetheless receive credits pursuant to *Conrad*.

Husband never argued *Conrad* credits at any point throughout the proceedings until the family court mistakenly brought the issue to light in the final divorce decree. Because of the court's mistake, Wife filed a motion for reconsideration. The family court held a hearing on the motion and ultimately granted Wife relief because the court belatedly recalled that the $600.00 monthly payments were set as temporary spousal support at the initial hearing in the proceedings. Husband incorrectly argues that the family court only denied him *Conrad* credits because the word "spousal support" was used in the temporary order. The family court, in its Order of Reconsideration, held the following:

> As this was an error of the court, the court shall modify this provision of the Final Divorce Decree to state the [Husband] shall not receive [*Conrad*] credits for his payment on the [marital] home, from the date of separation (September 3, 2020) through April 30, 2023, in the final calculation of equitable distribution, as those payments have already been deemed spousal support by the court.

It makes no difference that Husband was ordered to pay the spousal support directly to a third party. *See Murray v. Murray*, No. 12–0771, 2013 WL 2462175, at *4 (W. Va. June 7, 2013) (memorandum decision) (mortgage payments husband made after separation were ordered as temporary spousal support).

Therefore, based upon our review of the record and the Supreme Court of Appeals of West Virginia's ruling in *Murray*, we find no error in the family court's denial of an award of *Conrad* credits.

Accordingly, we affirm the family court's September 20, 2023, Order of Reconsideration.

Affirmed.

**ISSUED:** April 22, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

7