585 S.E.2d 28

**Louis PELLICCIONI, Jr., Plaintiff Below, Appellee,**

v.

**Debra PELLICCIONI, Defendant Below, Appellant.**

### No. 30630.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided June 17, 2003.

such an inference in a number of cases with similar facts).

Susan Kipp McLaughlin, Esq., McLaughlin & Curry, Fairmont, for Appellant.

David J. Straface, Esq., Angotti & Straface, Morgantown, Lonnie C. Simmons, Esq., DiTrapano, Barrett & DiPiero, PLLC, Charleston, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Monongalia County entered on October 24, 2001. In that order, the circuit court adopted a recommendation of the family law master (hereinafter "FLM")[1] denying the appellant and defendant below, Debra Pelliccioni, an

---

1. The family law master system ceased to operate on January 1, 2002, and was replaced by a system of family court judges. *See* W.Va.Code § 51–2A–23 (2001). The proceedings in this case occurred under the family law master system.

extension of rehabilitative alimony and an increase in child support. In this appeal, Ms. Pelliccioni contends that the circuit court erred by adopting the FLM's recommendation.

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed, in part, and reversed, in part, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

## I.

## FACTS

Debra and Louis Pelliccioni, Jr., were married on July 11, 1987. The parties had two children during their marriage. Brice was born on May 18, 1990, and Cody was born on August 26, 1992. The parties separated in December 1993, and a final divorce decree was entered on December 6, 1995.

Pursuant to the divorce decree, Ms. Pelliccioni was awarded custody of the children. Mr. Pelliccioni was ordered to pay Ms. Pelliccioni child support in the amount of $1,644.74 per month. He was further ordered to pay her $4,000.00 per month in rehabilitative alimony through June 30, 1998. The court retained jurisdiction to extend the period of rehabilitative alimony.

By order entered on July 2, 1998, the child support amount was increased to $1,819.34, effective May 1, 1997. On November 24, 1998, Ms. Pelliccioni filed a motion seeking an extension of her rehabilitative alimony.[2] She also sought a further increase in child support. Hearings were held on September 29, 1999 and January 18, 2000. On March 29, 2001, the FLM entered a recommended order denying an extension of alimony and denying an increase in child support. Thereafter, Ms. Pelliccioni filed a petition for review with the circuit court. On October 24, 2001, the circuit court adopted the FLM's recommendation. This appeal followed.

**2.** Ms. Pelliccioni had filed two prior motions seeking an extension of her alimony which the

## II.

## STANDARD OF REVIEW

 We begin our analysis of this case by setting forth our standard of review. This Court has stated that:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). In addition, this Court has held that, "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). With these standards in mind, we now consider the parties' arguments.

## III.

## DISCUSSION

### A. Rehabilitative Alimony

 Ms. Pelliccioni first contends that the circuit court erred by not extending her rehabilitative alimony. She is currently unemployed, but attends college full-time and hopes to obtain both a bachelor's degree and a master's degree. Ms. Pelliccioni claims that she was unable to obtain a college degree during the period that she received rehabilitative alimony because she stayed at home to raise the parties' children. She also states that ongoing litigation in this case concerning the division of the parties' marital property thwarted her efforts at rehabilita-

FLM determined were premature.

tion. Thus, she argues that her rehabilitative alimony should be extended.

Mr. Pelliccioni maintains that Ms. Pelliccioni is not entitled to any further rehabilitative alimony. Mr. Pelliccioni points out that Ms. Pelliccioni has received a total of $192,000.00 in rehabilitative alimony, but only completed one college course. He argues that her lack of effort during the rehabilitative period does not justify an extension of her rehabilitative alimony. Furthermore, he submits that an extension of alimony in this case would have the effect of encouraging spouses who receive rehabilitative alimony to make no effort at rehabilitation.

■ In Syllabus Point 1 of *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984), the seminal case on rehabilitative alimony in West Virginia, this Court explained that "[t]he concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Consequently, this Court determined in Syllabus Point 2 of *Molnar* that "[a] circuit court does have authority to award rehabilitative alimony in an appropriate case." This Court further advised circuit courts to consider continuing jurisdiction where rehabilitative alimony has been awarded so that the amount and duration of rehabilitative alimony can be reconsidered at a later time. Syllabus Point 3, in part, *Molnar*.

■ Of course, a modification of rehabilitative alimony is only justified where there is evidence establishing a change in the circumstances of the parties. In other words, "[c]ircumstances between the parties can substantially change once rehabilitative alimony is awarded, and where such change of circumstances justify an award of rehabilitative alimony, the award can be extended or

modified to a permanent alimony award." Syllabus Point 6, *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993). Generally,

[a] rehabilitative alimony award may be extended or modified into a permanent alimony award where the dependent spouse demonstrates a substantial change in the circumstances under which rehabilitative alimony was awarded. In determining whether a substantial change of circumstances exists which would warrant a modification of a rehabilitative alimony award to a permanent alimony award, the trial court may consider a reassessment of the dependent spouse's potential work skills and the availability of a relevant job market, the dependent spouse's age, health and skills, the dependent spouse's inability to meet the terms of the rehabilitative alimony plan, as well as any of the other factors set forth in West Virginia Code § 48-2-16 (1992).[3] The trial court should not consider modifying a rehabilitative alimony award to a permanent alimony award until the dependent spouse has had a reasonable amount of time to comply with the terms of the rehabilitative alimony award.

Syllabus Point 7, *Wood* (footnote added).

Having considered the entire record in this case, we do not believe Ms. Pelliccioni has demonstrated a substantial change in circumstances to warrant an extension of her rehabilitative alimony. In fact, Ms. Pelliccioni's circumstances have not changed at all since her divorce due to a lack of effort on her part. She readily admits that she has not sought gainful employment and that she only completed one college course during the rehabilitative period. Her explanation for her lack of effort is that she felt it was necessary to stay home and raise her children. According to Ms. Pelliccioni, she and Mr. Pelliccioni decided before the children were born that

**3.** The majority of West Virginia's domestic relations laws were recodified during the 2001 session of the West Virginia Legislature. *See* W.Va. Code § 48-1-101 (2001). The new statutes became effective on March 22, 2001, and operative on September 1, 2001. *See* W.Va.Code § 48-1-103 (2001). As set forth above, the hearings in this case occurred before the new domestic relations laws became effective. Consequently, the

statutes that were in effect at the time are applicable and will be cited herein. However, the corresponding new statutes will be noted along with any amendments thereto that were made in 2001. Thus, it is hereby noted that W.Va.Code § 48-2-16 was recodified as W.Va.Code § 48-6-201 (2001) and W.Va.Code § 48-6-301 (2001). The list of factors to be considered in awarding spousal support was expanded.

she would stay home with them. However, it is uncontested that Mr. Pelliccioni repeatedly offered to care for the children when and if necessary so that Ms. Pelliccioni could pursue her education. Furthermore, Ms. Pelliccioni took no immediate action to rehabilitate herself even after her youngest child began school in August 1998.[4]

In requesting further rehabilitative alimony, Ms. Pelliccioni has placed a great deal of emphasis on the fact that there is a significant disparity in the parties' income. However, this Court has held that "alimony may not be awarded solely for the purpose of equalizing the income between spouses." *Stone v. Stone*, 200 W.Va. 15, 19, 488 S.E.2d 15, 19 (1997). Moreover, as set forth above, an extension of rehabilitative alimony should only be granted where there has been a substantial change in circumstances. For example, in *Wood*, this Court determined that Ms. Wood was entitled to an extension of rehabilitative alimony after she earned college credits to become a teacher but was only able to find work as a substitute teacher. 190 W.Va. at 456, 438 S.E.2d at 799. Likewise, in *Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985), this Court ordered an extension of Ms. Luff's rehabilitative alimony because her health had deteriorated and she was unable to find gainful employment. In this case, however, Ms. Pelliccioni has simply not presented any evidence establishing a change of circumstances. She only completed one college course during the rehabilitative period, and she made no effort to find employment. Accordingly, we cannot say that the circuit court abused its discretion by denying Ms. Pelliccioni an extension of her rehabilitative alimony.

### B. Child Support

■ Ms. Pelliccioni also contends that the circuit court erred by denying her an increase in child support. In particular, Ms. Pelliccioni claims that the FLM erred in calculating Mr. Pelliccioni's gross income by using his tax returns and allowing him to offset depreciation expenses for assets connected to his horse and rental businesses. She also asserts that the FLM erred by averaging Mr. Pelliccioni's income over a period of years to determine his gross income for the purpose of calculating child support. Finally, Ms. Pelliccioni contends that the FLM improperly recalculated Mr. Pelliccioni's income for years covered by a prior final order.

In response, Mr. Pelliccioni argues that the circuit court did not err by relying upon his income tax returns to determine his gross income for the purpose of calculating child support. He also notes that since the divorce decree was issued, his gross income has always been calculated by averaging his income over a five-year period. He concludes that Ms. Pelliccioni has offered no evidence to show that the court's child support calculations were incorrect.

■ As with alimony, a party seeking to modify a child support order must establish a change in circumstances. W.Va.Code § 48A–1B–11(a) (1999) [5] provides:

> The provisions of a child support order may be modified if there is a substantial change in circumstances. For purposes of this section, if application of the [child support] guideline would result in a new order that is more than fifteen percent different, then the circumstances are considered to be a substantial change.

In this case, the FLM determined that application of the child support guideline resulted in only a seven percent change, and therefore, a modification of child support was not warranted.

In making the child support calculations, the FLM relied upon Mr. Pelliccioni's income tax returns to determine his gross income. The record shows that Mr. Pelliccioni is employed as a stockbroker. In addition, he has

---

**4.** Ms. Pelliccioni finally enrolled in college full-time in September 1999.

**5.** W.Va.Code § 48A–1B–11 was recodified as W.Va.Code § 48–11–105 (2001). Although worded differently, the new statute also requires that a change of circumstances precede a modification of a child support order. The new statute also presumes that a change of circumstances has occurred where the application of the child support guideline results in a new child support order that is "more than fifteen percent different" from the prior order. W.Va.Code § 48–11–105(b).

income from various rental properties. He is also in the business of raising race horses. By relying upon Mr. Pelliccioni's income tax returns to determine his gross income for calculating child support, depreciation expenses for assets connected to Mr. Pelliccioni's businesses were deducted from his income. Ms. Pelliccioni contends that this was improper. We disagree.

W.Va.Code § 48A–1A–19(b)(1999) [6] defines "gross income" to include:

> (7) Income from self-employment or the operation of a business, minus ordinary and necessary expenses which are not re-imbursable, and which are lawfully deduct-ible in computing taxable income under applicable income tax laws, and minus FICA and medicare contributions made in excess of the amount that would be paid on an equal amount of income if the parent was not self-employed.

Depreciation expenses are ordinary and nec-essary expenses which are lawfully deduct-ible in computing taxable income. Thus, based upon the plain language of the stat-ute,[7] depreciation expenses should be exclud-ed from a parent's income for the purpose of calculating child support.

We also disagree with Ms. Pelliccioni's con-tention that the FLM should not have aver-aged Mr. Pelliccioni's income over a period of five years to determine his gross income for child support purposes. While Ms. Pellic-cioni maintains that Mr. Pelliccioni's income should not have been averaged for any peri-od of time, she argues that if income is to be averaged, it should be for three years, not five years, based on W.Va.Code § 48A–1–19.[8] That statute provides that the income from self-employment or the operation of a busi-ness should be determined by "averaging the income from such employment during the previous thirty-six month period or begin-ning with the month in which the parent first received such income, whichever period is shorter." W.Va.Code § 48A–1A–19(b)(7).

As discussed above, Mr. Pellic-cioni has income from several sources, and the record clearly establishes that his income varies from year to year. Therefore, we cannot say that the FLM erred by averaging his income. Furthermore, we do not believe that the FLM erred by averaging his income for five years instead of three years. This Court has held that:

> In conjunction with any determination of child support pursuant to the child support guidelines set forth in West Virginia Code of State Regulations §§ 78–16–1 to –20 (1988), where a support obligor's income is not a fixed amount, but tends to fluctuate significantly from year to year, sole reli-ance on the support obligor's year-to-date income is insufficient for the purposes of determining child support, either initially or in the context of a modification. In cases involving fluctuating income, the court must require full financial disclosure and review financial information including, but not limited to, income tax returns and year-to-date income *for a lengthy enough period of time so that significant past or anticipated changes in income are incor-porated when calculating the support obli-gor's income.*

Syllabus Point 1, *Ball v. Wills,* 190 W.Va. 517, 438 S.E.2d 860 (1993) (emphasis added). The final order in this case which incorpo-rates the FLM's findings of fact and conclu-sions of law states:

> The Plaintiff/Respondent's income is far more difficult to ascertain. W.Va.Code § 48A–1A–19(b)(7) directs the Court to av-erage self-employment income over a span of 36–months. However, in this case, the Plaintiff/Respondent's income varies wild-ly. The previous Family Law Master elected to average Plaintiff/Respondent's income over a larger span of time to en-

---

**6.** W.Va.Code § 48A–1A–19 was recodified as W.Va.Code § 48–1–228 (2001). The language at issue was not changed.

**7.** " ' "A statutory provision which is clear and unambiguous and plainly expresses the legisla-tive intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syllabus point 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syllabus Point 3, *Albright v. White,* 202 W.Va. 292, 503 S.E.2d 860 (1998).

**8.** *See* note 6, *supra.*

hance accuracy. This Family Law Master believes that practice should be repeated. For example, in 1998 there was over $12,000 in losses reported by Plaintiff relating to his rental properties, but in 1995 there was $1,200 in profits from those rental properties. Furthermore, the very nature of Plaintiff's business as an investment dealer/manager for Prudential Securities inherently causes wide fluctuations in income to him. The Master has reviewed the Plaintiff's income over five (5) years. In this case, averaging Mr. Pelliccioni's income over five years instead of three results in a higher average income thereby benefitting Ms. Pelliccioni in the child support calculation. Thus, based on the above, the FLM did not abuse his discretion by averaging Mr. Pelliccioni's income over a period of five years.

We do, however, find that the FLM erred by recalculating Mr. Pelliccioni's income for 1994 and 1996. The FLM's order states that Mr. Pelliccioni's income for 1994 was $173,441.00 and "after business expenses of $16,013 he had income of $157,428." For 1996, the FLM indicates that Mr. Pelliccioni's "net income after business expenses was $138,228." However, in the 1997 order which modified and increased Mr. Pelliccioni's child support obligation, the FLM assigned to the case at that time found that in 1994, Mr. Pelliccioni "earned $182,231.42 in total income for that year." The 1997 order also states that Mr. Pelliccioni "earned approximately $208,000.00 in total income" in 1996.

The 1997 order constitutes a final judgment and the doctrine of *res judicata* prohibits any relitigation of the issues decided therein. In Syllabus Point 3 of *Slider v. State Farm Mut. Auto. Ins. Co.*, 210 W.Va. 476, 557 S.E.2d 883 (2001), we explained that:

"An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but

it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata*." Syl. pt. 1, *Sayre's Adm'r v. Harpold*, 33 W.Va. 553, 11 S.E. 16 (1890).

Accordingly, in calculating child support in this instance, the FLM was bound by the previous final orders entered in this case which set forth Mr. Pelliccioni's income for prior years. Since the FLM recalculated Mr. Pelliccioni's income for at least two years, 1994 and 1996, we must reverse that portion of the final order relating to child support and remand this case for a recalculation of child support. Upon remand, the income figures for Mr. Pelliccioni set forth in prior orders must be utilized.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Monongalia County entered on October 24, 2001, is affirmed, in part, and reversed, in part, and this case is remanded for the sole purpose of recalculating child support as set forth herein.

Affirmed, in part, reversed, in part, and remanded.