602 S.E.2d 454

**Tammi RAY, Petitioner Below, Appellant,**

v.

**Jimmie RAY, Defendant Below, Appellee.**

**No. 31674.**

Supreme Court of Appeals of West Virginia.

Submitted: June 8, 2004.

Filed: June 23, 2004.

James M. Cagle, Charleston, for Appellant.

Richard A. Hayhurst, Parkersburg, for Appellee.

PER CURIAM.

Tammi Ray (hereinafter referred to as "Ms. Ray"), appellant/plaintiff below, appeals an order recommended by the Family Court of Kanawha County and affirmed by the Circuit Court of Kanawha County. Here, Ms. Ray assigns error to the family court

1. The oldest child, Whitney, was born May 13, 1987. The youngest child, Justin, was born December 14, 1990.

2. In 2000, Mr. Ray filed for a writ of prohibition with this Court seeking to prohibit enforcement of an order awarding Ms. Ray temporary alimony. We denied the writ. *See State ex rel. Ray v. Canady*, 208 W.Va. 182, 539 S.E.2d 442 (2000) (per curiam).

3. The parties give conflicting dates as to when the final order was entered regarding child support. Ms. Ray's brief indicates that the date was November 27, 2001. Mr. Ray argued to the

judge's order which modified a previous child support order by reducing Mr. Ray's child support payments. The same order also required her to repay "overpayments" for past child support. After a careful review of the briefs and record in this case, the decision of the family court is reversed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Ms. Ray and Jimmie Ray (hereinafter referred to as "Mr. Ray"). appellee/defendant below, were married in December 1982. Two children were born of the marriage.[1] In September of 1996 the parties separated, and Ms. Ray later filed a complaint for divorce. At some point in 2000, a final order was entered granting a divorce.[2] A subsequent order was entered on December 4, 2001,[3] that obligated Mr. Ray to pay monthly child support in a total amount of $3,894.[4]

On January 3, 2002, Mr. Ray filed a petition to modify child support, asserting that the initial child support order "was chimeric and based upon legally and factually erroneous assumptions and findings[.]" After taking evidence, the family court judge entered an order on February 11, 2003, that reduced child support payments to a total of $368.08 per month.[5] The family court judge also awarded Mr. Ray $36,832.20, as child support overpayments for the period from January 2002 to October 2002 during which the modification proceeding was pending. Additionally, the family court judge suspended further

family court judge and in his brief before this Court that the complained of order was entered on December 4, 2001. The order has not been made a part of the record in this appeal. Therefore, we will rely upon the date given to the family court judge by Mr. Ray. Our resolution of this case would be the same regardless of which date is the correct one.

4. The record does not indicate how this amount was divided between the two children.

5. The new child support award was divided as follows: $211.71 for Whitney, and $156.37 for Justin.

child support payments until Ms. Ray had repaid the overpayment in full to Mr. Ray.

Ms. Ray filed a petition for appeal with the circuit court, challenging the child support modification order. The circuit court denied the petition for appeal.[6] Thereafter, Ms. Ray filed an appeal to this Court.

## II.

## STANDARD OF REVIEW

■ In Syllabus point 1 of *May v. May,* 214 W.Va. 394, 589 S.E.2d 536 (2003), we set out the applicable standard of review as follows:

> In reviewing a final order of a family court judge [when the circuit court has denied a petition for appeal], we review findings of fact by a family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

With these principles in view, we will proceed to the issues presented in this proceeding.

6. *See* W. Va.Code § 51–2A–14(a) (2001) (Supp. 2003) ("The circuit court may refuse to consider the petition for appeal, may affirm or reverse the order, may affirm or reverse the order in part or may remand the case with instructions for further hearing before the family court judge.").

7. At the time the circuit court entered its December 4, 2001, order, the current family court system was not in existence. "Effective January 1, 2002, the Legislature significantly revamped the family courts of West Virginia by replacing the family law master system with a new system of family court judges." *Delapp v. Delapp,* 213 W.Va. 757, 759 n. 2, 584 S.E.2d 899, 901 n. 2 (2003) (per curiam).

8. West Virginia Code § 48–11–105 reads in full:
    (a) The court may modify a child support order, for the benefit of the child, when a motion is made that alleges a change in the circumstances of a parent or another proper person or persons. A motion for modification of a child support order may be brought by a custodial parent or any other lawful custodian or guardian of the child, by a parent or other person obligated to pay child support for the child or by the bureau for child support enforcement of the department of health and human resources of this state.

## III.

## DISCUSSION

### A. Petition to Modify Child Support Cannot Substitute for a Timely Appeal

■ The initial issue we must address, which was not briefed by the parties, involves the subject matter jurisdiction of the family court to entertain the petition to modify child support filed in this case. We have held that "[w]here neither party to an appeal raises, briefs, or argues a jurisdictional question presented, this Court has the inherent power and duty to determine [the issue] unilaterally[.]" Syl. pt. 2, in part, *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995). Insofar as subject matter jurisdiction is not waivable, we may sua sponte address the matter. *See Snider v. Snider,* 209 W.Va. 771, 777, 551 S.E.2d 693, 699 (2001) ("Whether a court has subject matter jurisdiction over an issue is a question of law which may be raised at any point in the proceedings.").

■ Mr. Ray filed a "Petition for Modification" of the child support order with the family court on January 3, 2002.[7] In that petition, Mr. Ray expressly alleged that he was filing the petition pursuant to W. Va. Code § 48–11–105 (2001) (Repl.Vol.2001).[8]

    (b) The provisions of the order may be modified if there is a substantial change in circumstances. If application of the guideline would result in a new order that is more than fifteen percent different, then the circumstances are considered a substantial change.
    (c) An order that modifies the amount of child support to be paid shall conform to the support guidelines set forth in article 13–101, et seq., of this chapter unless the court disregards the guidelines or adjusts the award as provided for in section 13–702.
    (d) The supreme court of appeals shall make available to the courts a standard form for a petition for modification of an order for support, which form will allege that the existing order should be altered or revised because of a loss or change of employment or other substantial change affecting income or that the amount of support required to be paid is not within fifteen percent of the child support guidelines. The clerk of the circuit court and the secretary-clerk of the family court shall make the forms available to persons desiring to represent themselves in filing a motion for modification of the support award.
    Mr. Ray also cited Rule 49 of the West Virginia Rules of Practice and Procedure for Family Court. Rule 49 reads in full:
    Leave of court shall not be required for filing a petition for modification. A petition for

Further, Mr. Ray's petition alleged that he was seeking to modify the December 4, 2001, child support order. The jurisdictional issue presented by the above facts is whether the December 4, 2001, child support order had to be initially challenged by an appeal, or the appeal period had to have expired, before a petition to modify under W. Va.Code § 48–11–105 could be entertained by the family court.[9] As we shall explain below, the family court did not have jurisdiction to entertain a petition for modification of the child support order under W. Va.Code § 48–11–105 while that order was appealable.

At the time Mr. Ray filed his petition for modification, the Legislature had enacted W. Va.Code § 51–2A–10 (a) (2001), which became effective January 1, 2002, and provides the exclusive procedure for challenging a final order of the family court prior to filing an appeal.[10] This statute provides as follows:

> Any party may file a motion for reconsideration of a temporary or final order of the family court for the following reasons: (1) Mistake, inadvertence, surprise, excusa-

ble neglect or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been available at the time the matter was submitted to the court for decision; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) clerical or other technical deficiencies contained in the order; or (5) any other reason justifying relief from the operation of the order.

W. Va.Code § 51–2A–10(a). *See also* Rule 25, West Virginia Rules of Practice and Procedure for Family Court ("Any party may file a motion for reconsideration of a family court order as provided in W. Va.Code, § 51–2A–10.").

■ Mr. Ray did not avail himself of the relief permitted by W. Va.Code § 51–2A–10(a). Instead, Mr. Ray erroneously invoked W. Va.Code § 48–11–105.[11] Absent a petition for appeal to this Court and an adverse ruling or the expiration of the appeal period,[12] Mr. Ray could not challenge the child support order pursuant to W. Va.Code § 48–11–105.[13] He had to invoke W. Va.Code

---

modification shall be in writing, specify facts which demonstrate good cause for relief, be filed with the circuit clerk, and sent to all parties. Within five days of the filing of a petition for modification the circuit clerk shall notify the family court. If a petition for modification is filed in a closed case, the petition shall be filed with three copies of a case information statement, and served on all parties. Within five days of receipt of a petition for modification the family court shall send a scheduling order to all parties.

9. Under W. Va.Code § 58–5–4 (1998) (Supp. 2003), a party generally has four months from the entry date of a final order in which to petition for appeal to this Court.

10. Although the final order was entered by the circuit court, and not the family court, W. Va. Code § 51–2A–10(a) could have been used because "[e]ffective January 1, 2002, all family court cases pending before the circuit court, whether on review of recommended order or otherwise, [were] transferred to the jurisdiction of the family court." Rule 3(b), West Virginia Rules of Practice and Procedure for Family Court.

11. W. Va.Code § 48–11–105 and W. Va.Code § 51–2A–10(a) require different standards of proof. Under W. Va.Code § 48–11–105, the dispositive factor is a showing of substantial change in circumstances, whereas W. Va.Code § 51–2A–10(a) requires proof of (1) mistake, inadvertence,

surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) clerical or other technical deficiencies contained in the order; or (5) any other reason justifying relief.

12. During oral arguments counsel for Mr. Ray admitted that, prior to filing the petition for modification, Mr. Ray did not file a petition for appeal of the December 4, 2001, order with this Court.

13. Even prior to the enactment of W. Va.Code § 51–2A–10(a), litigants could not invoke W. Va. Code § 48–11–105 to challenge a child support order before the expiration of the appeal period. Instead, the decisions of this Court permitted litigants to challenge an appealable domestic relations final order through a motion under Rule 60(b) of the West Virginia Rules of Civil Procedure. *See, e.g., Delapp v. Delapp*, 213 W.Va. 757, 584 S.E.2d 899 (2003) (per curiam); *Wooten v. Wooten*, 203 W.Va. 686, 510 S.E.2d 760 (1998) (per curiam); *Kapfer v. Kapfer*, 187 W.Va. 396, 419 S.E.2d 464 (1992) (per curiam); *Pauley v. Pauley*, 164 W.Va. 349, 263 S.E.2d 897 (1980) (per curiam). Rule 60(b) "provides a basis for relieving a party from a final judgment upon the following grounds: (1) mistake, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the

§ 51–2A–10(a).[14] Consequently, the family court judge did not have jurisdiction over the petition for modification filed on January 3, 2002, pursuant to W. Va.Code § 48–11–105.[15] *See* Syl. pt. 1, *Hinkle v. Bauer Lumber & Home Bldg. Center, Inc.,* 158 W.Va. 492, 211 S.E.2d 705 (1975) ("Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket.").[16]

In view of the above analysis, the family court's order modifying child support must be reversed.[17]

---

14. We have held that other procedural remedies cannot substitute for an appeal. *See, e.g.,* Syl. pt. 3, *Hustead on Behalf of Adkins v. Ashland Oil, Inc.,* 197 W.Va. 55, 475 S.E.2d 55 (1996) ("A declaratory judgment action can not be used as a substitute for a direct appeal."); Syl. pt. 3, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996) ("Prohibition ... may not be used as a substitute for [a petition for appeal] or certiorari."); Syl. pt. 2, *Nancy Darlene M. v. James Lee M.,* 195 W.Va. 153, 464 S.E.2d 795 (1995) ("Rule 60(b)(5) of the West Virginia Rules of Civil Procedure ... is not to be invoked as a substitute for an appeal."); *State ex rel. Phillips v. Legursky,* 187 W.Va. 607, 608, 420 S.E.2d 743, 744 (1992) ("Traditionally, we have held that habeas corpus is not a substitute for an appeal[.]"); *North v. West Virginia Board of Regents,* 160 W.Va. 248, 259, 233 S.E.2d 411, 418 (1977) ("[C]ertiorari is not a substitute for an appeal or writ of error."); *State ex rel. Cooper v. Garvin,* 139 W.Va. 845, 849, 82 S.E.2d 612, 615 (1954) ("Mandamus will not be utilized as a substitute for an appeal or writ of error.").

15. Assuming, for the sake of discussion, that a petition for modification could have been brought under W. Va.Code § 48–11–105, the family court's ruling would still have to be reversed. This is because, in modifying the child support order, the family court permitted Mr. Ray to relitigate the findings made regarding his income for periods that were determined in the December 4, 2001, order. Specifically, Mr. Ray alleged in his petition that he "did not have actual income in the year 2001[.]" Insofar as Mr. Ray did not appeal the December 4, 2001, order, his income status in 2001 could not be reopened in a modification proceeding under W. Va.Code § 48–11–105. In other words, had the matter been properly before the family court, the family court would have had to accept, under the

---

judgment has been satisfied or vacated; or (6) any other reason justifying relief." Syl. pt. 1, ... *as v. Savas,* 181 W.Va. 316, 382 S.E.2d 510 (1989). Mr. Ray did not avail himself of Rule 60(b) while the case was still under the jurisdiction of the circuit court, *i.e.,* before January 1, 2002. Moreover, as a result of the enactment of W. Va.Code § 51–2A–10(a), Rule 60(b) is no longer the appropriate procedure for challenging a final domestic relations order prior to the expiration of the appeal period. This is because the grounds for relief under W. Va.Code § 51–2A–10(a) are almost identical to those contained in Rule 60(b).

doctrine of res judicata, the 2001 determination of Mr. Ray's income status. *See Pelliccioni v. Pelliccioni,* 214 W.Va. 28, 36, 585 S.E.2d 28, 36 (2003) (per curiam) ("Accordingly, in calculating child support in this instance, the FLM was bound by the previous final orders entered in this case which set forth Mr. Pelliccioni's income for prior years.").

16. Had Mr. Ray invoked W. Va.Code § 51–2A–10(a), the family court was still without jurisdiction to enter the order, as it did, on February 11, 2003. This is because W. Va.Code § 51–2A–10(b) expressly provides that "[t]he family court *must enter an order ruling on the motion within thirty days* of the date of the filing of the motion." (Emphasis added.) This thirty day window for ruling on a motion for reconsideration is mandatory because "a motion for reconsideration does not toll the time for appeal." *Rowan v. McKnight,* 184 W.Va. 763, 764 n. 2, 403 S.E.2d 780, 781 n. 2 (1991). Thus, insofar as Mr. Ray filed his petition on January 3rd, if the matter had been brought as a motion for reconsideration under W. Va.Code § 51–2A–10(a), the family court was statutorily required to enter an order ruling on the matter by February 3, 2002. As indicated, the family court did not enter an order on the petition until February 11, 2003–well beyond the limited jurisdictional period granted by W. Va.Code § 51–2A–10(b). Of course, we understand that, as a practical matter, the family court was not fully operational when Mr. Ray sought to challenge the child support order. However, this fact did not preclude Mr. Ray from filing a petition for appeal with this Court.

17. To the extent this Court could have actually addressed the merits of the family court's decision, we would have reversed that decision on the merits. Modification of child support under W. Va.Code § 48–11–105(b) requires showing "a substantial change in circumstances[.]" In this proceeding, Mr. Ray contended that between the period December 4, 2001, when the child support order was entered, and January 3, 2002, when he filed his petition (roughly thirty days), a substantial change occurred in his income status. No facts were presented to show any substantial change in his income status during this roughly thirty day period. In fact, the record indicates that at the time of the modification request, Mr. Ray had assets in excess of two million dollars. It is of no moment to this Court that Mr. Ray may have voluntarily or involuntarily ceased his employment before or after the December 4th

### B. Availability of Costs and Attorney's Fees

■ As a final matter, we note that Ms. Ray has requested attorney's fees and costs associated with bringing this appeal. We find that, under the facts of this case, the requested attorney's fees and costs are appropriate. Therefore, we order that Mr. Ray pay Ms. Ray's reasonable attorney's fees and costs incurred in bringing this appeal, and order that a hearing be scheduled to determine Ms. Ray's reasonable attorney's fees and costs in accordance with this opinion. *See Wilson v. Wilson,* 214 W.Va. 14, 18, 585 S.E.2d 14, 18 (2003) (per curiam); *Rogers v. Rogers,* 197 W.Va. 365, 374, 475 S.E.2d 457, 466 (1996); *Ball v. Wills,* 190 W.Va. 517, 526, 438 S.E.2d 860, 869 (1993).

## IV.

### CONCLUSION

In view of the foregoing, that part of the family court's order entered on February 11, 2003, modifying child support is reversed,[18] and the December 4, 2001, child support order of the circuit court is reinstated. This case is remanded to the family court for a determination of the amount of costs and reasonable attorney's fees to which Ms. Ray is entitled for prosecuting this appeal.

Reversed and Remanded.

Justice ALBRIGHT concurs and reserves the right to file a concurring opinion.

ALBRIGHT, Justice, concurring.

I concur in the judgment rendered in this case. I regret that the Court did not take the opportunity in this opinion to distinguish between the receipt of income as a result of work or investment of capital and the recovery of principal, that is, money received from the sale of an asset. This case presented an opportunity for this Court to clarify how, if at all, the conversion of an asset by sale or exchange impacts the separate duties of effecting an equitable distribution of marital assets, paying alimony where appropriate, and calculating child support within the context of ongoing financial obligations owed by a litigant who, for whatever reason, converts an existing asset to some other form of property, real or personal.

While I am satisfied that the result in the instant case served justice, I do not think that the reasons for that result can be fully and properly articulated in the absence of a clear understanding of the difference between the receipt of income and recovery of principal.

order. For the purposes of his child support obligations, he had and still has assets sufficient to pay the required child support, such that income could be "attributed" to him. *See* Syl. pt. 4, *Porter v. Bego,* 200 W.Va. 168, 488 S.E.2d 443 (1997) (" 'Attributed income' means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or reasonably utilized, applied, or invested his or her assets."); W. Va.Code § 48–1–205 (2001) (defining attributed income). If Mr. Ray chooses not to work, his assets can be voluntarily or involuntarily made liquid so as to pay his child support obligations.

18. The family court's February 11, 2003, order addressed additional issues that are not before this Court. Consequently, our decision in this case does not affect the validity of the additional issues resolved by that order.