632 S.E.2d 45

**In re: the Marriage of Kathy M. SLOAN, Petitioner Below, Appellee**

v.

**Edward W. SLOAN, Respondent Below, Appellant.**

**No. 32852.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 14, 2006.

Decided: March 16, 2006.

---

Richard A. Bush, Parkersburg, for the Appellee.

Steven T. Cook, Stapleton Law Offices, Huntington, for the Appellant.

## PER CURIAM.

This is an appeal by Edward W. Sloan (hereinafter "Appellant") from a final order of the Circuit Court of Wood County. The Appellant contends that the lower court committed various reversible errors in the resolution of the divorce between the Appellant and his former wife, Appellee Kathy M. Sloan. Upon thorough review of the record, briefs, arguments of counsel, and applicable precedent, this Court affirms in part, reverses in part, and remands this matter for further action consistent with this opinion.

### I. Factual and Procedural History

In March 2004, the Appellee filed for divorce after almost twenty-three years of marriage. The Family Court conducted a hearing on August 13, 2004, in which both parties testified. The evidence presented at that hearing addressed the parties' respective financial positions and also revealed that both parties are in their mid-forties and are in good health. One minor child of the parties remains in high school and is expected to graduate from high school in May 2006.[1] The pertinent testimony further indicated that Mrs. Sloan was previously employed by the federal government in a clerical position in 1983. Mrs. Sloan also possesses thirty to forty hours of college credit. The evidence further reflected that the Appellant earns approximately $102,000.00 per year. The parties also submitted extensive evidence regarding their expected monthly incomes and expenses.

While the stipulated value of the marital home was $44,000.00, the parties had recently expended approximately $62,500.00 in upgrades to the home in anticipation of Mrs. Sloan's parents living in the home with the parties. Mrs. Sloan's parents allegedly provided Mrs. Sloan with $10,000.00 to assist in the construction expenses of the addition, but Mrs. Sloan decided to return that $10,000.00 to her parents. Both of Mrs. Sloan's parents are now deceased.

By order entered January 21, 2005, the Family Court granted the parties a divorce based upon irreconcilable differences. The Family Court ruled that Mrs. Sloan was entitled to $1,800.00 monthly in spousal support for thirty-six months and $1,000.00 per month thereafter until she attains the age of sixty-two. This calculation of the amount of spousal support was based upon Mr. Sloan's income of $102,000.00 per year, as well as the parties' disclosures of financial information. The Family Court found that with substantial retraining, Mrs. Sloan could resume employment in a clerical capacity. However, due to the family's decision that Mrs. Sloan should remain at home during the years in which her children were in school, the Family Court found that she should not be required to return to work immediately. Thus, the Family Court attributed only minimum wage to Mrs. Sloan, approximately $900.00 monthly.

With regard to child support, the Family Court ordered the Appellant to pay $676.00 monthly. The order further required the child support obligation to continue beyond the date when Daniel reaches the age of eighteen years, and provided that the obligation should continue

so long as said child is then unmarried, is residing with a parent, is enrolled in a secondary school or vocational school, and is making substantial progress toward a diploma; provided, however, that said child support obligation should not be required

---

**1.** The parties' minor son, Daniel, was born on February 29, 1988, and became eighteen years of age approximately three months prior to his scheduled May 2006 high school graduation.

to continue beyond the date when said child reaches the age of twenty (20) years.

Mr. Sloan's pension from his employment with General Electric was divided evenly between the parties. With regard to a 401K plan, the Family Court order required that Mrs. Sloan should receive $34,300.00 from that account and Mr. Sloan should receive the remaining amount, approximately $110,831.00. Loans were taken against the 401K account in order to subsidize the parties' approximate $62,500.00 expenditure to remodel the marital home. With regard to the other outstanding debts of the parties, the lower court found that Mrs. Sloan should be required to pay her car loan of $9,122.00 and a dental bill of $1,800.00. Further, the Appellant was required to pay $354.00 monthly for three years in COBRA coverage for Mrs. Sloan and $39.00 monthly in insurance for the parties' son. In explaining the allocation of marital debt, the Family Court stated that it was requiring the Appellant to pay a "substantially greater portion of the marital debt, thereby off-setting the fact that he will be retaining a substantially greater portion of the marital assets."

By order entered March 7, 2005, the Circuit Court of Wood County affirmed the findings and conclusions of the Family Court. Mr. Sloan now appeals to this Court, contending that (1) the spousal support award is excessive; (2) Mrs. Sloan's attorney should not have been permitted to prepare the Qualified Domestic Relations Order regarding Mr. Sloan's pension; (3) the marital home should have been sold; (4) child support beyond the child's 18th birthday is improper; and (5) the final order contained elements not discussed during the hearing, such as the award of child support possibly to age twenty.

## II. Standard of Review

■ In establishing a standard of review for examining a lower court's rulings on matters of equitable distribution, this Court has consistently held as follows:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.

Syllabus, *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004). *See also* Syl. Pt. 2, *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003). Further, in the single syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), this Court held that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Based upon these standards, we address the merits of this appeal.

## III. Discussion

### A. Spousal Support

■ Mr. Sloan contends that the award of $1,800.00 per month in spousal support is unreasonably high. In reviewing lower court pronouncements regarding spousal support, this Court has explained that "[a]bsent a finding of a statutory bar to [spousal support] or a finding of substantial fault or misconduct on the part of the spouse seeking [spousal support], the determination of awarding [spousal support] is to be based on 'the financial position of the parties.'" *Banker v. Banker,* 196 W.Va. 535, 541, 474 S.E.2d 465, 471 (1996) (quoting *Hickman v. Earnest,* 191 W.Va. 725, 726, 448 S.E.2d 156, 157 (1994)).

■ As this Court has maintained, spousal support is not to "be awarded solely for the purpose of equalizing the income between spouses." *Pelliccioni v. Pelliccioni,* 214 W.Va. 28, 34, 585 S.E.2d 28, 34 (2003) (quoting *Stone v. Stone,* 200 W.Va. 15, 19, 488 S.E.2d 15, 19 (1997)). Pursuant to West Virginia Code § 48-6-301(b) (2001) (Repl. Vol.2004),[2] twenty items must be considered

---

2. West Virginia Code § 48-6-301(b) provides as follows:

(b) The court shall consider the following factors in determining the amount of spousal sup-

in determining the amount of spousal support to be awarded. The Family Court's order reveals extensive consideration of all factors enumerated by the statute. Foremost, the Family Court acknowledged the salary of the Appellant, $102,000.00 annually, and the absence of any recent employment history of Mrs. Sloan. The Family Court also commented upon the comfortable standard of living enjoyed by the couple during their marriage and noted that the husband's salary would adequately support the maintenance of the current lifestyles of each of the parties. Specifically, the Family Court explained as follows:

The parties established a comfortable middle-class standard of living during their marriage. Their current lists of monthly expenses disclose lifestyles somewhat reduced from previous levels, appropriate to their current means and the fact that they

are now maintaining two households on a single income. Adequate income is available to maintain the current lifestyles of each of the parties.

Based upon this Court's review of the record, as well as the Family Court's factual findings, conclusions of law, and rationale, this Court finds no justification to disturb the lower court's determinations regarding the amount of spousal support owed by the Appellant. We consequently affirm that portion of the Family Court order.

### B. Equitable Distribution

This Court's review of the financial evidence introduced by the parties reveals that the Family Court and Circuit Court have placed the primary burden upon the Appellant to repay debts incurred as a result of the marital decision to improve the family home.

port, child support or separate maintenance, if any, to be ordered under the provisions of parts 5 and 6, article five [§§ 48-5-501 through 48-5-514 and §§ 48-6-101 through 48-5-613[sic]] of this chapter, as a supplement to or in lieu of the separation agreement:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

The expenditures for such improvements were financed through loans from the Appellant's 401K account, and the Appellant was required by the lower courts' orders to repay the loans without assistance from the Appellee. According to evidence in the record, the 401K account, as of January 18, 2004, contained $144,681.00. In addition, there was an outstanding balance of $26,228.30. The imbalance in responsibility for repayment of that debt was recognized by the Family Court and was justified by the assertion that the substantial debt was assumed by the Appellant because he retained the primary portion of the 401K account.

■ However, our review of this matter leads to the conclusion that, particularly in light of the fact that the Appellee allegedly decided to return the offered $10,000.00 to her parents, it appears that the parties should share in the financial burden that was created through the joint marital decision to improve the family home. Moreover, upon receiving the marital home in the divorce action, it is the Appellee, Mrs. Sloan, who now possesses the benefits of the remodeling of the marital home. The parties agreed to remodel the home in anticipation of Mrs. Sloan's parents residing there; money offered by Mrs. Sloan's parents was rejected by Mrs. Sloan; the bulk of the debt was undertaken by the Appellant in the divorce action; and Mrs. Sloan currently reaps the benefits of the remodeling. We find such result inequitable, even in light of the fact that the Appellant will ultimately retain the larger portion of the 401K funds.

While one specific debt obviously cannot be analyzed in a vacuum and the comprehensive financial situation must be simultaneously evaluated, this Court finds that the Family Court abused its discretion in this limited regard. This case is remanded for additional evidence on the issue of expenditures for remodeling of the marital home and reconsideration of the allocation of debt incurred thereby. Evidence was submitted indicating that the parties invested approximately $62,500.00 in the home, as remodeled, but that the appraised value of the home, as

remodeled, does not exceed $44,000.00. Evidence also indicated that the home is located in a less desirable neighborhood and that the appraised value did not change substantially after the addition of the new kitchen, bathroom, and other amenities.

Upon remand, the Family Court should ascertain with some precision the amount the parties invested in the home in excess of the appraised value of the home, and upon findings of fact and conclusions of law modify its final order to assess one half of the excess investment over the appraised value to each of the parties, in such manner that the Appellant and Mrs. Sloan shall contribute equally toward the excess of the renovation expenditures over the appraised value of the home and the ultimate repayment of the loans taken from the 401K plan for those excess expenditures.[3]

### C.  Child Support

West Virginia Code § 48–11–103 (2002) (Repl.Vol.2004) provides that child support may be extended past the age of eighteen under certain circumstances. In pertinent part, the statute provides as follows:

(a) Upon a specific finding of good cause shown and upon findings of fact and conclusions of law in support thereof, an order for child support may provide that payments of such support continue beyond the date when the child reaches the age of eighteen, so long as the child is unmarried and residing with a parent, guardian or custodian and is enrolled as a full-time student in a secondary educational or vocational program and making substantial progress towards a diploma: Provided, That such payments may not extend past the date that the child reaches the age of twenty.

In the present case, the hearing conducted by the Family Court did not contain any specific reference to the potential for extension of child support beyond the age of eighteen. There was apparently no discussion of such of possibility at the hearing; the final order simply set forth that requirement without prior discussion. In response to the

---

**3.**  The Appellant also assigned error to the lower court's decision to permit Mrs. Sloan's attorney to prepare the Qualified Domestic Relations order. We find no error in that regard.

Appellant's brief in this case, the Appellee acknowledged that the Family Court "may have erred in failing to make the required statutory findings to extend the child support obligation beyond the age of eighteen." However, the Appellee contended that any error is harmless and that the statutory extension should apply to extend the child support obligation until Daniel graduates from high school.

█ Daniel turned eighteen in February 2006. He is expected to graduate from high school in May 2006.[4] Thus, under the provisions of the statute quoted above, it appears that this young man may be entitled to continued child support three months past his eighteenth birthday. However, we find that the lower court abused its discretion by entering an order in which no evidence was presented to extend child support beyond the age of eighteen. On remand and full consideration of the evidence developed or to be developed by the parties on this issue, the lower court should make such findings of fact and conclusions of law as shall be appropriate to determine the extent to which the child support obligation should continue beyond the age of eighteen, if any, and set forth a termination date for the child support obligation.

Affirmed in part, reversed in part, and remanded.

STARCHER, J., dissenting.

The majority opinion cogently says that, when an appellate court considers a party's complaint that a family court's distribution of marital property is inequitable, "one specific debt obviously cannot be analyzed in a vacuum and the comprehensive financial situation must be simultaneously evaluated[.]"

I dissent because the majority opinion ignored its own sage advice. The majority opinion focused its gaze solely upon the parties' marital house, and the debt to remodel that house, in a vacuum. The result is an opinion that tells the family court judge to go back and do what the family court has already done: ascertain the value of the parties' equity and debt, and make sure the equity and debt are equally divided. The majority opinion never really says what the family court did wrong; the case is remanded for nothing more than for the family court judge to go through the motions and, more likely than not, come to the same conclusions.

The parties in this case plainly—without question—made poor financial decisions. A fundamental rule of home improvement is that you never, ever invest so much money into your house that it becomes the most valuable house on the block. But that is exactly what the parties in this case did. They over-improved a home in a poor neighborhood. They invested $62,500.00 into remodeling a $44,000.00 house that, when all was said and done, was still worth a grand total of $44,000.00. These were not disputed figures; the parties *stipulated* to these numbers.

The majority opinion seems to suggest some confusion about where the money to finance these renovations came from. The money was not borrowed from some third party, like a bank. The financing was provided, indirectly, by the parties themselves. The money was borrowed against Mr. Sloan's 401K retirement account. So when the family court judge made Mr. Sloan solely responsible for paying the "debt," Mr. Sloan was ordered to do nothing other than putting money back into his future, into his retirement.

The family court judge has already balanced the equity and debt of the parties. The judge awarded Ms. Sloan the marital house plus a small portion of Mr. Sloan's 401K plan; Mr. Sloan was awarded the remaining positive value of his 401K. Mr. Sloan even concedes that he was "allowed to keep a slightly larger portion of his 401K."[1]

4. Daniel is apparently an exemplary student, and there is no reason to believe that he will be academically unable to graduate with his senior class in May 2006.

1. Mr. Sloan's real gripe is not that the marital assets were distributed unequally in a mathematical sense. His complaint is temporal, because he is being awarded the value of his 401K, an asset that he cannot use until the future when he retires, while his now-ex-wife is receiving the current use of a fully-remodeled house.

If I read the majority opinion correctly, it seems to suggest that the family court judge should consider on remand, within its discretion, making Ms. Sloan pay some share of the "debt" owed to Mr. Sloan's 401K—but, to fairly do this, the family court judge would then need to allocate a greater portion of Mr. Sloan's 401K to Ms. Sloan, since she would be contributing to an increased future value of this asset. But to require Ms. Sloan make these debt payments when she has no income would reach a punitive result—which appears to be the precise result desired by Mr. Sloan.[2]

The majority opinion puts much focus on the reasons why the parties remodeled their home.[3] However, these reasons are irrelevant. The critical facts are that the parties were married for twenty-three years, and during the marriage they both agreed to expend marital assets to improve another marital asset, their home. Mr. Sloan earns in excess of $100,000.00 per year, while Ms. Sloan has been a stay-at-home mother since 1983. I believe that the family court judge equitably divided the parties' assets, and fairly placed the burden and benefit of paying back the debt against the 401K plan on the only party with a salary: Mr. Sloan. The majority opinion's remand of this case, without any solid direction as to how the family court abused its discretion, therefore seems pointless.

Accordingly, I respectfully dissent.

---

2. Let's try and put the parties' positions in concrete terms. Assume that Mr. Sloan's retirement plan was worth $30.00, and the parties borrowed $10.00 against that plan. That means the retirement plan has a net worth of $20.00. Ms. Sloan essentially argues that the parties' marital home is worth $20.00. If she keeps the home, and Mr. Sloan keeps the retirement plan, the parties' assets have been equitably split.

Mr. Sloan insists that Ms. Sloan—even though she has no income—must assist him in paying back the $10.00 toward his retirement plan. Adopting Mr. Sloan's theory, Ms. Sloan would get $20.00 in marital assets, but then have to pay out $5.00 so that Mr. Sloan can retire with a $30.00 asset. This is by no measure an equitable distribution of marital assets.

3. The remodeling was ostensibly done so that Ms. Sloan's parents could comfortably move into the house.