488 S.E.2d 15

**Ira Timothy STONE, Plaintiff Below, Appellant,**

v.

**Connie L. STONE, Defendant Below, Appellee.**

No. 23856.

Supreme Court of Appeals of West Virginia.

Submitted April 22, 1997.

Decided May 8, 1997.

**16**

David M. Finnerin, Parkersburg, for Appellant.

C. Blaine Myers, Parkersburg, for Appellee.

PER CURIAM:

This is an appeal from an order of the Circuit Court of Wood County which granted a divorce to Ira Timothy Stone, plaintiff/appellant, hereinafter Mr. Stone, and Connie L. Stone, defendant/appellee, hereinafter Ms. Stone. Mr. Stone argues in this appeal that it was error for the circuit court to reject a recommendation by the Special Commissioner that he be awarded alimony.

## I.

### FACTUAL BACKGROUND

The parties in this proceeding were married on August 25, 1979. No children were born from the marriage.[1] The record indicates that both parties were employed during the marriage. Mr. Stone was employed as a paramedic with St. Joseph's Hospital. Ms. Stone was employed as a nurse at the same hospital.

During the course of the marriage Ms. Stone pursued educational advancements.[2] In 1988, she received a B.S. degree in nursing. In August of 1993, she obtained a Master's degree in management. Shortly after receiving her Master's degree Ms. Stone was

---

**1.** The record indicates that both parties were previously married. Each party had a child from their first marriage. Both children are now emancipated by age.

**2.** Mr. Stone did not seek educational advancement during the marriage. He has a high school diploma.

appointed Clinical Director of Emergency Services at St. Joseph's Hospital.

On October 15, 1993 the parties executed a separation agreement.[3] Mr. Stone filed a complaint for divorce on October 19, 1993. The complaint referenced irreconcilable differences as the ground for divorce. A Special Commissioner was appointed by the circuit court to provide recommendations on property distribution issues.

On January 2, 1996 the Special Commissioner submitted recommendations to the circuit court. One of the recommendations made by the Special Commissioner was that Mr. Stone be awarded alimony in the amount of $400 per month for four years. The circuit court adopted all of the Special Commissioner's findings of fact and conclusions of law, except that of alimony. On February 21, 1996 the circuit court entered a final decree granting the parties' a divorce on the grounds of irreconcilable differences. The final decree did not award alimony to either party. Mr. Stone is before this Court seeking reversal of the circuit court's decision to reject the Special Commissioner's alimony recommendation.

## II.

### STANDARD OF REVIEW

We begin our analysis by articulating the applicable standard of review.[4] Recently in syllabus point 1 of *Pearson v. Pearson*, 200 W.Va. 139, 488 S.E.2d 414 (1997) we stated:

'In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.' Syl. Pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

We set out in *Pearson* "the standard a court should employ when reviewing the findings of fact and recommendations of a family law master or, as in this case, a special commissioner[.]" *Banker v. Banker*, 196 W.Va. 535, 540, 474 S.E.2d 465, 470 (1996). In syllabus point 2 of *Pearson* we held:

'A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.' Syl. Pt. 1, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995).

We now address the single issue presented on appeal.

## III.

The sole issue to decide is whether the circuit court properly rejected the Special Commissioner's recommendation of alimony to Mr. Stone.[5] To resolve this issue we must first ascertain the Special Commissioner's rationale for a recommendation of alimony. The Special Commissioner provided two reasons for awarding alimony to Mr. Stone: (1) to equalize the net income of the parties, and (2) as a rehabilitative award.

### A.

### *W.Va.Code § 48–2–16(b) Does Not Authorize Alimony For The Sole Purpose Of Equalizing Income*

The Special Commissioner's decision to award alimony was based, in part, upon an

---

3. The separation agreement was set aside by the circuit court. Mr. Stone contested setting aside the separation agreement. He does not raise the matter as an issue in this appeal.

4. The briefs of both parties evidence a lack of understanding of this Court's standard of review of a final divorce decree. Ms. Stone argues that the review is *de novo* and Mr. Stone contends it is an abuse of discretion standard. What both parties fail to realize is that a three pronged test of review is applicable to divorce proceedings. Two of the prongs include *de novo* review and abuse of discretion. The third prong is the clearly erroneous standard. Each prong is mutually exclusive of the others and is assigned to a specific area of analysis.

5. The brief of Ms. Stone asserts that Mr. Stone has appealed the issue of attorney fees. However, Mr. Stone's reply brief clearly points out that its brief only discussed attorney fees in order to present his argument for alimony. Mr. Stone has not appealed the lower tribunals' denial of attorney fees.

effort to equalize the net income of the parties. The record indicates that Mr. Stone's gross annual income was $41,692. Ms. Stone's annual gross income was $57,986. Using various calculations, the Special Commissioner adjusted the amounts so that, after providing $400 per month to Mr. Stone as alimony, his net monthly income would be $2,735. Ms. Stone's net monthly income would be $2,776.[6]

The circuit court rejected the income equalization justification by stating "that the award of alimony in this action is based upon an erroneous interpretation and application of the statute, which is not designed to equalize the net incomes of the parties." The statute referenced by the circuit court is W.Va.Code § 48–2–16(b) (1996).[7]

■ The equalization of income as a basis for an alimony award is one of first impression for this Court. Jurisdictions that have addressed this issue are divided. Courts allowing equalization of income to be a factor

in the determination of alimony, do so where there is a substantial disparity between the parties' income. *See Guiel v. Guiel,* 682 A.2d 957 (Vt.1996); *Burt v. Burt,* 799 P.2d 1166 (Utah.Ct.App.1990); *Kennedy v. Kennedy,* 145 Wis.2d 219, 426 N.W.2d 85 (App.1988); *Stearns v. Stearns,* 284 S.C. 459, 327 S.E.2d 343 (1985); *Cathleen C.Q. v. Norman J.Q.,* 452 A.2d 951 (Del.1982). Other jurisdictions addressing the issue reject equalization of income as a factor in awarding alimony. *See Reichert v. Reichert,* 246 Neb. 31, 516 N.W.2d 600 (1994); *In the Matter of Marriage of Leslie,* 130 Or.App. 327, 881 P.2d 159 (1994); *Kennedy v. Kennedy,* 622 So.2d 1033 (Fla.Ct.App. 5th Dist.1993).

The divorce law in this state is a product of the legislature. Upon review of W.Va.Code § 48–2–16(b) and our divorce law in general, we perceive no clear legislative intent that alimony be awarded solely on the basis of equalizing the income between former spouses.[8] This issue "clearly requires legislative

**6.** Ms. Stone argues in her brief that the Special Commissioner improperly reduced her monthly expenses in order to equalize the parties' net income. We have reviewed the factual findings of the Special Commissioner on this issue and do not find any improper adjustment. In fact, the Special Commissioner was absolutely correct in finding that the law will not permit parties to incur unnecessary expenses for the purpose of reducing any potential available money for alimony.

**7.** The pertinent language in W.Va.Code § 48–2–16(b) provides consideration of alimony based upon the following factors:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

**8.** We are aware that W.Va.Code § 48–2–16(b)(16) grants general discretion for consideration of other equitable factors in making an alimony determination. However, this provision must not be arbitrarily taken out of context. As was pointed out in *Banker,* 196 W.Va. at 543–44, 474 S.E.2d at 473–74 that:

consideration and legislative action as it is a marked deviation from existing law." *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 357, 484 S.E.2d 232, 240 (1997). Therefore, we hold that alimony may not be awarded solely for the purpose of equalizing the income between spouses. An alimony award must be based on the sixteen factors set forth in W.Va.Code § 48–2–16(b). To the extent that the circuit court found alimony could not be awarded on the basis of equalizing the income of the parties, we affirm.

### B.

### *Rehabilitative Alimony*

The Special Commissioner's recommendation of alimony was also premised upon rehabilitative grounds. It was recommended that Mr. Stone be awarded rehabilitative alimony in the amount of $400 per month for four years. The rehabilitative alimony award was to assist Mr. Stone in obtaining additional education. Educational advancement is one of the sixteen factors set forth in W.Va.Code § 48–2–16(b) which the court may consider when awarding alimony. The circuit court rejected the recommendation of rehabilitative alimony in a letter opinion as follows: "[The plaintiff] is fully employed and is able to adequately support himself. Under such circumstances, a spouse is under no obligation to provide the other spouse with funds for education."

█ In syllabus point 3 of *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984) we held that:

There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then

the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

The findings made by the Special Commissioner detail the underlying facts which supported his recommendation. The Special Commissioner noted that the marriage lasted sixteen years. Mr. Stone had reached his maximum earning capacity as a paramedic. Only through further education could he maintain the same living standard he enjoyed during the marriage. The Special Commissioner found that Ms. Stone was able to advance her education and increase her income earning capacity by attending college during the marriage. Ms. Stone benefited by using marital funds to pay for her graduate education. Mr. Stone does not have that same opportunity. In fact, the Special Commissioner concluded that should Mr. Stone pursue educational advances, such pursuit would drastically affect his standard of living. Therefore, the Special Commissioner reasonably calculated the additional income necessary for Mr. Stone to pursue educational advancement. Such an analysis is contemplated within the meaning of W.Va.Code § 48–2–16(b)(8).

█ In contrast, the circuit court found that Mr. Stone was employed. Therefore, rehabilitative alimony was improper.[9] In syllabus point 3 of *Pearson* we said that:

'Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences.' Syl. Pt. 3, *Stephen L.H. v.*

---

[I]n interpreting the terms of our domestic relations statutes specifically, we, in the past, have taken care not to undermine the statutes' fundamental goals. Recognizing the statutes' varied uniqueness, we consistently have turned back neat legal maneuvers attempted by litigants that were not in keeping with overarching duties, responsibilities, and rights that the West Virginia Legislature intended.

We have not been able to discern from our divorce laws a legislative intent that a principle

like equalization of income is to be applied in determining alimony.

9. Mr. Stone argues in his brief that the circuit court failed to set out adequate findings in its letter opinion. While we do not encourage the abbreviated type of letter opinion offered in this case, we are able to discern the basis of the circuit court's decision on this narrow issue.

*Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995).

The circuit court's decision to reject the Special Commissioner's recommendation of rehabilitative alimony is clearly erroneous. In the final analysis, the circuit court rejected the recommendation merely because it drew contrary inferences from the findings made by the Special Commissioner. *Stephen L.H.* and its progeny do not permit setting aside a recommendation merely because a circuit court draws contrary inferences from the factual findings. We, therefore, reverse that part of the circuit court's final decree which denied rehabilitative alimony to Mr. Stone. Upon remand the circuit is to enter an order reinstating the Special Commissioner's recommendation on the issue of rehabilitative alimony.

## IV.

## CONCLUSION

For the foregoing reasons this case is affirmed in part, reversed in part and remanded for a disposition consistent with this opinion.

Affirmed in part; Reversed in Part; and Remanded.