IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**October 28, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SHARON TRAVIS,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-114**       (Fam. Ct. Ohio Cnty. Case No. FC-35-2021-D-213)

**DALE TRAVIS,**
**Petitioner Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Sharon Travis appeals the Family Court of Ohio County's February 14, 2024, final divorce order wherein she asserts twelve assignments of error. Respondent Dale Travis responded in favor of the family court's decision.[1] Sharon Travis filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

By way of background, Dale Travis ("Husband") purchased the home which later became the parties' marital home in June of 2008. On June 3, 2010, Husband transferred the home to the parties jointly by quitclaim deed. They were married on August 3, 2011. On December 18, 2013, another quitclaim deed was entered transferring the marital home to the parties as joint tenants with the right of survivorship and both parties were listed on the debt associated with the deed of trust. The parties separated on October 28, 2021. At that time, Sharon Travis ("Wife") was the owner of a nonprofit organization, Heart 2 Heart Volunteers, Inc.

At the time of the divorce, the parties also had a pending tort action in a separate case regarding damage to the marital home, which resulted in a $240,000 settlement prior to the final divorce hearing. To initiate the division of the tort proceeds, Husband filed a motion for temporary relief on December 17, 2021. Four days later the parties entered into an agreement which was adopted by the family court on December 21, 2021. The agreement provided that Husband would receive $50,000 of the tort proceeds and Wife would receive $190,000, with expert witness fees divided equally. The agreement also

---

[1] Sharon Travis is self-represented. Dale Travis is represented by Betsy Griffith, Esq.

1

listed multiple debts (two vehicles and multiple credit cards) that each party would be responsible for paying out of their individual proceeds. It appears from the record that the parties reached this agreement because Husband wanted to keep his 401k, which was valued between $130,000 and $140,000 at the time of separation.

A temporary hearing was held on or about March 10, 2022. At that hearing, the parties reached an agreement that Wife would retain temporary possession of the marital home and each party would pay half of the mortgage. On March 29, 2022, an order was entered which held that Husband would pay the utility expenses. A supplemental temporary order was entered on January 3, 2023, holding that Husband would pay $50.00 per month in spousal support, and that supplemental spousal support would be addressed in the final hearing.

Thereafter, multiple pleadings were filed by both parties. On April 27, 2023, Wife filed a motion to recuse the family court judge, which was denied by an administrative order entered on May 5, 2023. On May 19, 2023, the first of two final divorce hearings was held. At that hearing, the family court only addressed divorce grounds and entered an order granting the parties' divorce on May 30, 2023.

The last hearing was held on September 29, 2023. At that hearing, Husband called two expert witnesses to testify about the value of the marital home. The first expert testified that she performed an appraisal on February 25, 2023, and valued the home at $241,500 as of the parties' date of separation. Wife was present for the appraisal and was able to provide her input. Husband also called a foundation expert who testified that he inspected the home on August 3, 2022, and that the home's foundation was in fair to good condition and was structurally stable. Wife was also present for the foundation inspection and had the opportunity to express any concerns.

Also, during the final hearing, Wife presented her own home appraisal expert who testified that, as of January 17, 2023, the home was valued at $184,000. Husband was not present for this inspection. Wife's expert inspected the home for the parties' tort case, separate from the divorce. The family court would not allow a portion of Wife's appraisal report to be entered into evidence because the expert who prepared the report was not called as a witness to authenticate the document.

The final order was entered on February 14, 2024, and included the following findings of fact and conclusions of law:

1. Husband's marital home appraisal of $241,000 was more reliable and was used in calculating the parties' equitable distribution amounts.
2. The $240,000 tort settlement was marital property, as the tort action was commenced during the marriage.

3. Husband's 401k was valued at $127,836.82 after Husband made approximately $10,725.49 in withdrawals. Husband was allocated $10,725.49 in debt for equitable distribution purposes.

4. Husband provided testimony and exhibits reflecting that he paid $6,015.85 of post-separation marital debt for which he was given credit.

5. Wife was reimbursed $3,684.00 for payments made on her daughter's medical bills, which will constitute a credit for equitable distribution.

6. Husband's name was listed as an obligor on three Subaru leases for Wife's business. Payments were made late, which affected Husband's credit. The family court had no jurisdiction over such leases; therefore, they were allocated to Wife in the amount of $0.00 for equitable distribution purposes, as she will be responsible for both the asset and the debt.

7. The parties were unable to reach an agreement as to personal property. Husband presented a proposal and Wife did not present a counter proposal.

8. Husband presented receipts for tools that were purchased prior to the marriage, which effectively overcame the presumption that they were marital property.

9. Wife's share of equitable distribution was reduced by $300 for spousal support paid by Husband.

10. Husband resigned from a higher paying job to assist Wife with her nonprofit organization.

11. Fault was not considered in making a spousal support determination.

12. Since October of 2021, Husband paid $476.01 on the mortgage and all of the utility bills, which were considered temporary spousal support.

13. The parties were married for ten years and three months, neither party has the ability to earn substantially more than the other, and their debts are minimal; therefore, no further monthly spousal support was awarded.

14. Twenty-four thousand dollars was awarded to Wife as spousal support in gross.

15. Wife was ordered to pay $10,000 of Husband's attorney's fees out of her spousal support amount due to causing undue delay, which left Wife with $14,000 in spousal support.

16. If Wife is able to refinance the marital home, she shall pay Husband $41,591; if the marital home is sold at a price in accordance with the appraisal, Wife shall pay Husband $12,410.79.

17. Wife has ninety days from the entry date of the final order in which to refinance the marital home.

It is from the February 14, 2024, final divorce order that Wife now appeals. For these matters, we use the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family

court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Wife raises twelve assignments of error, which we will address in turn. First, Wife asserts that the family court judge was hostile and biased toward her. Specifically, Wife states that the family court judge yelled, denied the admittance of pertinent evidence, ruled in favor of Husband on most issues, and told Wife that she was required to provide copies of any exhibits to both the court and the opposing side. Wife's argument lacks merit. West Virginia Code § 51-2A-7(a) (2013) states that family court judges have the authority to manage the business before them, exercise reasonable control over discovery, and compel and supervise the production of evidence. The record reflects that the family court conducted two lengthy final hearings, one of which was solely dedicated to addressing equitable distribution, spousal support, and attorney's fees. Additionally, if Wife's complaints have merit, the proper course of action was to file a motion for recusal. Here, Wife has already taken such action and her motion was denied by an administrative order entered on May 5, 2023. Therefore, we conclude that the family court did not commit error or abuse its discretion in how it managed the hearing.

For her second assignment of error, Wife contends that the family court erroneously used a higher value for the marital home than it was worth after Husband argued for the higher value of the two appraisals, causing Wife to have to pay Husband more in equitable distribution. We disagree that the family court used the wrong value. Rule 901(a) of the West Virginia Rules of Evidence states, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Here, Wife failed to call the expert who prepared the appraisal as a witness to authenticate the document; therefore, the family court would not allow a portion of Wife's appraisal report to be entered into evidence. Based on those facts, the family court did not abuse its discretion in using Husband's home appraisal value.

Third, Wife argues that the family court erroneously refused to allow her to testify about the parties' settlement negotiations. Wife's argument lacks merit. Rule 408(a) of the West Virginia Rules of Evidence states:

> Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim, the liability of a party in a disputed claim, or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in

4

compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim.

Here, the family court properly refused Wife's testimony about the parties' discussions during the settlement negotiation process.

As her fourth assignment of error. Wife asserts that Husband withdrew money from his 401(k) without Wife's knowledge and the family court denied Wife's motion to compel discovery on the matter. Wife further states that the family court judge erred by offsetting Wife's tort settlement against Husband's 401(k). We disagree. The record reflects that Husband withdrew $10,725.49 from his 401(k). The family court addressed this issue by allocating $10,725.49 in debt to Husband in equitable distribution, which balanced out his withdrawals. Therefore, we find no basis in law to warrant relief as to this assignment of error.

Fifth, Wife contends that the family court erred by including a credit toward Husband's portion of equitable distribution for a payment that Wife made on her daughter's insurance. In support of her argument, Wife stated that no evidence was produced showing that the payments were made during the marriage. We disagree with Wife's argument. The Supreme Court of Appeals of West Virginia has long held that "[t]he party seeking to exclude property from the marital estate that is presumptively marital property, has the burden of persuasion on that issue." Syl. Pt. 4, *Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999). Here, if the daughter's bills were paid post-separation, it was Wife's burden of proof to demonstrate such, and she failed to do so. Therefore, the family court did not abuse its discretion in adjusting equitable distribution to reflect Wife's payments.

As her sixth assignment of error, Wife argues that the family court erred by attributing the leased vehicles belonging to Wife's business only to Wife in equitable distribution. We disagree. The family court determined that it lacked jurisdiction over Wife's business's leases. Therefore, they were allocated to Wife in the amount of $0.00 for equitable distribution purposes. The family court did not count the vehicles as a credit or a debt, as Wife will be responsible for both the asset and the debt as part of her business. Thus, the family court did not abuse its discretion in attributing Wife's business's leases solely to Wife.

Next, as her seventh assignment of error, Wife asserts that the family court erred by not awarding Wife permanent spousal support. We disagree. West Virginia Code § 48-6-301 (2018) provides a list of twenty factors to be considered when weighing an award of spousal support. Here, the family court issued a detailed analysis of each applicable spousal support factor in making its final ruling. The Supreme Court of Appeals of West Virginia has explained that as long as the family court fully considers the mandatory statutory factors, and the award of spousal support is within the parameters of reasonableness, a reviewing court should not disturb the award on appeal. *Mulugeta v. Misailidis*, 239 W. Va.

404, 410, 801 S.E.2d 282, 288 (2017). Further, the Supreme Court has held that "[spousal support] may not be awarded solely for the purpose of equalizing the income between spouses." *Stone v. Stone*, 200 W. Va. 15, 19, 488 S.E.2d 15, 19 (1997). Because the family court fully considered all applicable spousal support factors in West Virginia Code § 48-6-301, we conclude that the court did not abuse its discretion for this assignment of error.

Eighth, Wife contends that the family court erred by allocating some of the parties' personal property. We disagree. The record reflects that Husband submitted a proposed allocation of personal property to the family court and provided receipts for many of the items. Wife did not rebut Husband's arguments with regard to personal property. Therefore, the family court did not abuse its discretion on this issue.

As her ninth and tenth assignments of error, Wife argues that the family court erred on page fifteen of the final order in calculating expenses and that the family court used an inaccurate calculation of her living expenses. However, Wife does not clearly articulate the inaccuracy in the family court's calculation or support her argument with citations to the appendix record. Therefore, we decline to rule on these assignments of error because Wife failed to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which states that a petitioner's brief "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues [. . .] were presented to the lower tribunal." Under Rule 10(c)(7), "[t]he Intermediate Court [. . .] may disregard errors that are not adequately supported by specific references to the record on appeal." Additionally, Husband stated in his brief that he was confused about Wife's ninth and tenth assignments of error, and Wife provided no additional clarification in her reply brief. Therefore, we cannot find error in the family court's ruling.

In her eleventh assignment of error, Wife asserts that the family court erred when it ordered Wife to pay $10,000 of Husband's attorney's fees. We disagree. West Virginia Code § 48-5-611(c) (2001) states:

> When it appears to the court that a party has incurred attorney's fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney's fees and costs to the other party.

The family court found that Wife prolonged the process unnecessarily by arguing that the tort settlement was not marital property, insisting that Husband provide receipts for every piece of property that he claimed was his separate property, and serving four discovery requests on Husband. Husband provided more than 1,300 pages of documentation in answering Wife's discovery requests. As such, the family court ordered Wife to pay $10,000 of Husband's $33,000 attorney's fees, which was offset by spousal support. The

record reflects that Husband proved that Wife unnecessarily delayed the process. Moreover, the family court thoroughly analyzed the parties' respective financial conditions by considering the parties' income, monthly expenses, and standard of living, thereby satisfying the factor analysis required by Syllabus Point 4 of *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996). Accordingly, we cannot find that the family court abused its discretion in awarding Husband a portion of his attorney's fees.

Last, as Wife's twelfth assignment of error, she contends that the family court erred by including the parties' personal vehicles in its equitable distribution calculation. We disagree. West Virginia Code § 48-1-233(1) (2001) defines marital property as:

> All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property does not include separate property as defined in section 1-238;

Because the parties' vehicles were marital property, they were required to be included in the court's equitable distribution calculation, regardless of the fact that the parties reached an agreement. "Equitable distribution […] is a three-step process. The first step is to classify the parties' property as marital or non-marital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [W. Va. Code § 48-7-103]." Syl. Pt. 1, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990).

Accordingly, we affirm the family court's February 14, 2024, final order.

Affirmed.

**ISSUED:** October 28, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear