IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CHRISTOPHER M.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-39**   (Fam. Ct. Harrison Cnty. Case No. FC-17-2024-D-97)

**LUCIA M.,**
**Petitioner Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Christopher M. ("Husband")[1] appeals the Family Court of Harrison County's December 18, 2024, Amended Decree of Divorce. Respondent Lucia M. ("Wife") and the guardian ad litem for the children filed responses in support of the family court's order.[2] Husband did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision affirming, in part, vacating, in part, and remanding this matter with instructions to enter an amended order consistent with this decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties were married in 2008 and separated in early 2024, with Husband moving approximately six hours away from the marital home to Virginia. The parties had four children during their relationship, who were ages eighteen, fifteen, fourteen, and thirteen at the time the final order on appeal was entered in this matter. As such, only the three minor children are subject to this appeal.

In March of 2024, Wife filed a divorce petition and motion for temporary relief in the Family Court of Harrison County. On April 10, 2024, the family court held a temporary

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Both parties are self-represented. The guardian ad litem for the children is Allison McClure McManus, Esq.

1

hearing on the divorce petition and Wife's motion. On April 15, 2024, the family court entered a temporary order, which outlined, among other things, the final hearing date and included filing deadlines. The order temporarily awarded possession of the marital home to Wife, awarded Husband parenting time every weekend from Friday to Sunday, awarded monthly child support to Wife in the amount of $1,400, ordered Husband to return Wife's Mazda vehicle to her, ordered Wife responsible for the debt and expenses associated with the marital home and Mazda, ordered Husband to take the necessary steps to ensure that Wife may speak with the mortgage company throughout the pendency of the proceeding no later than April 12, 2024, and ordered Husband's monthly child support obligation be reduced to $903 upon his return of the Mazda to Wife. The order also appointed a guardian ad litem for the minor children and ordered the guardian ad litem to investigate the matters before the court. The family court ordered all updated financial information, witness lists, and exhibits be filed by the parties no later than July 1, 2024.

On June 17, 2024, the guardian ad litem filed her investigative report with the family court and the circuit clerk's office mailed copies of the report to the parties. In her report, the guardian ad litem stated that she interviewed the parties, their four children, and Wife's therapist. Based on her investigation, the guardian ad litem recommended that the children remain in the primary care of Wife and that Husband receive parenting time every other weekend, per the children's request. She reported that the children were very respectful, had good grades, and had valid responses for wanting to remain with Wife; she also observed the children were "all older, have a life, and relationships here that they are not willing to leave."[3] While the guardian ad litem noted that Wife's mental health history was concerning, she reported that Wife was being treated by a therapist.

On June 28, 2024, Wife filed a motion asking the family court to order Husband to comply with the April 15, 2024, temporary order. Wife asserted that Husband had not taken the steps necessary to allow her to speak with the mortgage company, had not paid child support, and had not filed any financial disclosures. By order entered July 1, 2024, the family court ordered Husband to file his financial information and witness list. On July 2, 2024, Wife filed a motion to compel Husband's compliance with the family court's temporary order. On July 2, 2024, the family court ordered Husband to immediately comply with all provisions in the April 15, 2024, temporary order.

---

[3] The guardian ad litem reported that the oldest minor child was going into the tenth grade, earned straight As, was in dance class, wanted to remain with her mother, and did not want to travel to Virginia every weekend because of her friends and activities. The guardian ad litem stated that the middle minor child was going into the eighth grade and wanted to remain with his mother to be closer to his friends. Lastly, the guardian ad litem reported that the youngest minor child was going into the seventh grade, played football, earned all As and two Bs on his last report card, and wanted to remain with his mother as his life and friends were near her, but wanted to visit his dad.

On July 17, 2024, Husband filed a petition for contempt alleging that Wife had failed to make the mortgage payments and the Mazda payments. After a hearing on Husband's petition, the family court did not find Wife in contempt of the court's April 15, 2024, order. By order entered August 23, 2024, the court found that Wife presented definitive proof that she contacted the mortgage lender and attempted to make the mortgage payments as ordered but that the lender refused to accept payment without first paying five delinquent mortgage payments, three of which were incurred prior to the parties' separation. The court also found that Wife was forced to rent a car because Husband had not returned the Mazda as ordered. As such, the court reasoned that Husband's failure to timely submit paperwork required by the mortgage company to modify the mortgage, his failure to return the Mazda to Wife resulting in having to rent a vehicle, and his failure to pay child support prevented Wife from timely complying with the mortgage and Mazda payments.

On July 29, 2024, Wife filed a petition for contempt on the basis that Husband still had not complied with the April 15, 2024, temporary order by filing his financial disclosures and witness list. Thereafter, on August 16, 2024, Husband filed his financial disclosures and witness list. On August 26, 2024, the day scheduled for the final divorce hearing, Husband filed a motion to continue due to an illness. Husband appeared by phone, and Wife and the guardian ad litem appeared in person. The family court granted Husband's motion to continue the final hearing. Prior to the conclusion of the hearing, the guardian ad litem stated that she would be starting new employment as an assistant prosecuting attorney. As such, the family court informed the parties that it would be relieving the guardian ad litem of her duties and that if either party wanted her to testify at the final hearing, they would need to subpoena her. The court noted that the guardian ad litem's report was filed on June 17, 2024, and that the guardian ad litem's new place of employment was in the same building as the family court. The family court informed the parties that if they did not subpoena the guardian ad litem then her report would stand on its own. Neither party objected and Husband congratulated the guardian ad litem on her new job.

On October 7, 2024, the family court held a final divorce hearing in the matter. The parties presented evidence and testimony regarding the value of marital property, Wife's mental health history, and custodial allocation. Wife testified and acknowledged her history of mental health issues, as well as her treatment and rehabilitation. Wife explained that she was doing much better as she was attending therapy and taking her prescribed medications. Wife argued in favor of primary custodial allocation due to the distance between the parties' residences, the children's preferences, and Husband's abuse of alcohol. Wife also presented evidence and argued for an award of spousal support. Conversely, Husband testified that he should be awarded primary custody of the children due to Wife's mental health issues regarding her past suicide attempts and maintained that he did not abuse alcohol.

On December 18, 2024, the family court entered an Amended Divorce Order.[4] At the outset, the family court noted that Husband's past motions and behavior had "eroded his credibility." Regarding equitable distribution, the family court found that Wife owed Husband $14,603 to equalize distribution, to be paid in full by December 31, 2025, which was outlined in an exhibit attached to the court's order. The court required Wife to refinance the home to remove Husband's name from the indebtedness no later than December 31, 2025. The family court found that charges on Wife's cell phone bill were related to Husband's cell phone, and he was ordered to pay Wife $150 per month no later than the 5th of each month until he had remedied those charges.

Regarding custodial allocation, the family court found that although there is a presumption that it is in the children's best interest for parenting time to be divided equally, pursuant to West Virginia Code § 48-9-209(f)(5)(A) (2024), the six hours of driving distance between the parties made equal parenting impossible during the school year and that pursuant to the guardian ad litem's report, West Virginia Code § 48-9-209(f)(5)(E) also justified deviating from the presumption of equal custody because it was the firm and reasonable preference of the children to live primarily with Wife. The family court also discussed Wife's history of mental health issues. The court found that Wife was a patient for two weeks following a late February 2024 suicide attempt but has since participated in treatment, therapy, and takes medication as directed by her healthcare providers. The family court stated that evidence adduced from the hearing established that Husband developed a drinking problem during the parties' marriage. The family court concluded that the presumption of equal custody was overcome and that it was in the best interests of the children to continue residing with Wife. The court reasoned that it was in the children's best interest to be close to their schools, friends, and activities in which they have been accustomed. Husband was awarded parenting time every other weekend from Friday to Sunday during the school year and three consecutive weeks during the summer. The court ordered the parties to communicate information on all topics via AppClose and restricted the parties from leaving the children home alone between 10:00 p.m. and 6:00 a.m. without an adult present.

Regarding child support, the family court found that Husband's regular gross income was $3,418.57 per month based on the thirteen weeks' pay history he provided, from an average of thirty-five hours per week at a regular pay rate. The court separately stated that Husband earned an average of ten hours per week at an overtime pay rate of $33.81 per hour. The court found that Wife's gross income was $3,600.13 per month. Pursuant to the child support guidelines, the court ordered Husband to pay $867.34 per month beginning on January 1, 2025.

---

[4] The family court stated that the original divorce order was amended to add additional equitable distribution language that was inadvertently omitted.

In determining spousal support, the family court first noted Husband's objection to Wife being awarded spousal support and, thereafter, considered the spousal support factors. The court found the following: that the parties lived together for almost sixteen years during their marriage; Wife stayed home to care for the children during some of the marriage; Wife has an engineering degree from Slovakia that cannot be used in the United States of America; Husband has a high school diploma and some technical college hours; the parties' standard of living was limited to necessities; Wife completed one semester of a paramedic program during their marriage and has one semester remaining; Wife's monthly income was $3,600.13, Husband's monthly income was $5,500.00, each of the parties' monthly expenses exceeded their income but both parties had at least one other adult residing with them who should be able to contribute to living expenses; and Wife's monthly phone bill was $300.00 higher because Husband and three members of his family remain on Wife's account. The family court found that Husband waived any claim to spousal support based upon his not requesting the same and ordered him to pay spousal support in gross of $250 per month to Wife for twenty-four months. It is from this December 18, 2024, Amended Decree of Divorce that Husband now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

At the outset, we note that Husband's brief contains an assignment of error section which fails to set forth specific assignments of error. Rather, his assignment of error section outlines eighteen unidentified assignments of error and instead contains lengthy arguments.[5] Notably, Husband's brief contains no separate argument section. It was,

---

[5] Husband's brief failed to comply with Rule 10(c) of the West Virginia Rules of Appellate Procedure. The Supreme Court of Appeals of West Virginia ("SCAWV") recently explained the importance of compliance with Rule 10 in providing for clear, concise, and organized briefs and emphasized the significance of that rule and that parties, including self-represented parties, should not anticipate that this Court will find or make arguments for them. *See Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Va.*, 245 W. Va. 495, 502-03, 859 S.E.2d 438, 445-46 (2021). Rule 10(c) provides that "the petitioner's brief *shall* contain the following sections in the order indicated[.]" (Emphasis added.) The

therefore, a challenge to understand Husband's various contentions because of his "lengthy, free-flowing argument" that failed to focus on any specific assignments of error. However, as has been our past practice, we will be mindful that "[w]hen a litigant chooses to represent himself, it is the duty of the [court] to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party." *Joseph B. v. Candie G.*, No. 24-ICA-425, 2025 WL 1604532, at *2 (W. Va. Ct. App. June 6, 2025) (memorandum decision) (citing *Bego v. Bego*, 177 W. Va. 74, 76, 350 S.E.2d 701, 703 (1986)). The gist of Husband's relevant arguments seems to be that he was improperly denied primary custodial allocation and spousal support, his monthly income was incorrect, and Wife's student loans were improperly included in the equitable distribution calculation. Therefore, we have examined the brief, the hearing discs, and appendix record provided, and will address Husband's arguments to the best extent possible.

On appeal, Husband appears to argue eighteen assignments of error. Because some assignments of error are similar, we will consolidate them and address them out of order for efficiency and clarity of our review. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

First, Husband argues that the family court erred by considering the guardian ad litem's investigative report in its decision. In support of his argument, Husband asserts that the family court failed to enter an order appointing the guardian ad litem, did not provide him with the guardian ad litem's report until the day of the final hearing, and denied him

---

rule goes on to specify, in order, nine different sections that must follow the cover page beginning with a table of contents. *Id*. Rule 10(c)(3) requires that the brief "open with a list of the assignments of error that are presented for review, expressed in terms and circumstances of the case but *without unnecessary detail*." (Emphasis added). "The practice of opening a brief with a series of assignments of error serves to alert the Court to the singular issue or issues that may have adversely affected the outcome before the trial court." *Wilson v. Kerr*, No. 19-0933, 2020 WL 7391150, at *3 (W. Va. Dec. 16, 2020) (memorandum decision). Clearly defining the issues presented averts the danger that "the Court and respondent may discern different issues from a petitioner's lengthy, free-flowing argument." *Id*. While the brief must open with a list of assignments of error presented for review, Rule 10(c)(7) mandates that the brief contain an argument section which has separate, distinct headings corresponding to each of the aforementioned assignments of error. Rule 10(c)(7) also requires the separate argument section to include "citations that pinpoint when and how the issues . . . were presented to the [family court]."[5] This Court may disregard errors that are not adequately supported by specific references to the record. *Id*.

the opportunity to question the guardian ad litem during the final hearing.[6] The family court appointed the children's guardian ad litem by temporary order entered on April 15, 2024, and her report was filed on June 17, 2024. The court informed the parties at the initial final hearing on August 26, 2024, that the guardian ad litem would be available to subpoena for the rescheduled final hearing and that it would be a simple process since her new place of employment was two floors above the family court. There were no objections, and Husband congratulated the guardian ad litem on her new job. The family court also noted that Husband was provided a copy of the guardian ad litem's report by the circuit clerk via postal service on June 17, 2024, and recited Husband's Virginia mailing address. Thus, we are unable to find that the family court erred on this issue.

Next, Husband argues that the family court erred by deviating from the presumption of equal custodial allocation. In support of his argument, Husband contends that the court improperly considered the preference of the children. He maintains that the children were too young to sufficiently appreciate which parent would act in their best interest. We disagree. Pursuant to West Virginia Code § 48-9-209(f)(5)(E) (2024), when issuing a parenting plan, a family court must consider whether equal custody is

> [c]ontrary to the firm and reasonable preferences of a child who is 14 years of age or older; and to accommodate, if the court determines it is in the best interests of the child, the firm and reasonable preferences of a child under 14 years of age, but sufficiently matured that he or she can intelligently express a voluntary preference for one parent[.]

Here, the children were fifteen, fourteen, and thirteen, and the family court determined that it was in their best interest to continue residing with Wife and have proximity to their schools, friends, and activities. The family court found that the guardian ad litem's report reflected the children's custodial wishes and "the reasons each child offered for his/her choice." The guardian ad litem's report reflected that all the children were "very respectful . . . had good grades, and valid responses for wanting to remain where they are." Further, the family court also found that the six-hour distance between the parties additionally justified deviating from the presumption of equal custody. *See* W. Va. Code § 48-9-209(f)(5)(A).

---

[6] We note that Husband neither objected to the family court's consideration of the guardian ad litem's report, nor her unavailability for questioning at the October 7, 2024, final hearing. "Generally the failure to object constitutes a waiver of the right to raise the matter on appeal." *State v. Asbury*, 187 W. Va. 87, 91, 415 S.E.2d 891, 895 (1992). However, to ensure fairness and because no harm will be done to Wife, we will consider Husband's argument. *See Joseph B*. at \*2.

As we have previously explained, a "family court may deviate from equal custodial time if the court expressly finds that . . . a provision of West Virginia Code § 48-9-209(f) necessitates another arrangement." *Jonathon F. v. Rebekah L.*, 247 W. Va. 562, 564, 883 S.E.2d 290, 292 (Ct. App. 2023). The SCAWV has said "[q]uestions relating to . . . custody of the children are within the sound discretion of the [family] court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt., in part, *Nichols v. Nichols,* 160 W. Va. 514, 236 S.E.2d 36 (1977). Because the family court found multiple factors of West Virginia Code § 48-9-209(f)(5) justified deviating from the presumption of equal custody and analyzed the same, it is unnecessary for this Court to discuss Husband's remaining arguments pertaining to custodial allocation. Thus, we find that the family court acted within its statutory authority and find no error or abuse of discretion in its allocation of custody.

Next, Husband argues that the family court erred in the amount of child support it ordered him to pay. In support of his argument, he contends that Wife was dishonest regarding her income and that the family court made incorrect calculations pertaining to his monthly income. We disagree. The SCAWV has long held that "[i]t is within the sole province of the family court, as fact-finder, to decide issues of credibility, and this Court will not disturb those determinations. Even where testimony is uncontroverted, a fact-finder is free to disregard such testimony if it finds the evidence self-serving, and not credible." *Mulugeta v. Misailidis*, 239 W. Va. 404, 408-09, 801 S.E.2d 282, 286-87 (2017). The family court found that Husband's gross income at thirty-five hours per week was $3,418.57 per month. The court also found that he averaged ten overtime hours per week at $33.81 per hour, resulting in approximately $4,880.00 total gross monthly income. Upon review, the $867.34 child support obligation is consistent with Husband's monthly gross income. Our Legislature has proclaimed that "[t]here is a rebuttable presumption, in any proceeding before a court for the award of child support, that the amount of the award which would result from the application of these guidelines is the correct amount of child support to be awarded." W. Va. Code § 48-13-101 (2001). Giving due deference to the family court's factual findings and credibility determinations, we are unable to find an abuse of discretion or clear error in the family court's award of child support.

Next, Husband maintains that the family court erroneously found that he waived spousal support and abused its discretion by awarding spousal support to Wife.[7] In support of his argument, Husband maintains that the family court improperly weighed the evidence, failed to consider certain evidence, and made numerous erroneous findings regarding the spousal support factors. We agree, in part. West Virginia Code § 48-6-301(b) (2018) provides twenty factors that a family court is required to consider when determining the

---

[7] We note that while Husband objected to Wife receiving spousal support, Husband failed to argue that he is entitled to spousal support below during the final hearing. Therefore, the family court did not err in finding Husband waived spousal support.

amount of spousal support to be awarded. *See also Sloan v. Sloan*, 219 W. Va. 105, 109, 632 S.E.2d 45, 49 (2006). The SCAWV has held that "[q]uestions relating to [spousal support]" lie "within the sound discretion of the court" and those decisions will not be disturbed on appeal "unless it clearly appears that such discretion has been abused." *Mulugeta*, 239 W. Va. at 405, 801 S.E.2d at 284, syl. pt. 2, in part.

Here, the family court articulated all twenty spousal support factors and analyzed those relevant to the case at bar. However, as Husband argues, the family court based, in part, its determination and award of spousal support on an income finding which is both different and greater than the income finding in the child support calculation. As discussed above, the family court found his monthly income to be approximately $4,880.00. In determining spousal support, the family court found his monthly income to be $5,500.00 without any explanation as to how it arrived at this number.[8] Based on this Court's review of the record, as well as the family court's factual findings, conclusions of law, and rationale, we find the family court erred in determining spousal support based on an erroneous income finding. Therefore, we remand this issue to the family court to enter an amended order determining the appropriateness of spousal support based upon the correct income finding.[9]

Next, Husband argues that the family court erroneously included Wife's student loans in its equitable distribution calculation. We find merit in this argument. During the final hearing, Wife testified that she agreed to take responsibility for her student loans. The SCAWV "encourages the use of property settlement agreements to resolve the distribution of marital property[.]" *Warner v. Warner*, 183 W. Va. 90, 95, 394 S.E.2d 74, 79 (1990). As such, we conclude that Wife agreed to classify her student loan debt as her separate debt, and it should not have been included in the family court's equitable distribution calculation. Thus, we remand this issue to the family court with instructions to enter an amended order excluding Wife's student loans and recalculating the equitable distribution of the parties' property.

Accordingly, we affirm in part, and vacate in part, the family court's December 18, 2024, Amended Decree of Divorce. We remand this matter to the family court with instructions to enter an amended order pertaining only to spousal support and the equitable distribution chart excluding Wife's student loans consistent with this decision.

---

[8] The family court's findings regarding income are distinctly different. Therefore, we cannot assume the difference to be nothing more than a clerical error on appeal.

[9] We do not comment on whether an award, or amount and duration, of spousal support to Wife is appropriate on remand under the factors in West Virginia Code § 48-6-301(b). We simply note that the family court must use the appropriate income amount in its determination.

Affirmed in part, Vacated in part, and Remanded.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White